UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                           )   CRIMINAL NO. 05-10154-MLW
        v.                 )
                           )   Violations:
JOHN J. DIAMONT, JR.,      )     18 U.S.C. §371
        Defendant          )     26 U.S.C. §7206(1)

INDICTMENT

COUNT ONE (18 U.S.C. §371 - Conspiracy)

   The Grand Jury charges:

Introduction

   At all times material to this Indictment:

   1.  Shore Leasing Corp. (hereinafter "Shore Leasing") was a Massachusetts corporation, with a principal place of business in Middleton, MA. Shore Leasing was a holding company and owned 100 percent of the shares of Crystal Steel Corporation.

   2.  Crystal Steel Corporation (hereinafter "Crystal Steel") was a Massachusetts corporation, with a principal place of business in Middleton, MA. Crystal Steel operated as a steel service center and distributor, slitting, cutting and otherwise processing various metals and then selling the metal to various manufacturers and other customers.

   3.  JOHN J. DIAMONT, JR. (DIAMONT), the defendant herein, was the President of Shore Leasing and Crystal Steel, the sole shareholder of Shore Leasing, and a resident of Marblehead, MA. DIAMONT founded Shore Leasing and Crystal Steel in 1979 and was

active in the day-to-day management of both businesses.

4. S. Strogoff & Co. was a Massachusetts corporation, with a principal place of business in Chelsea, MA. It operated as a scrap metal dealer, purchasing scrap metal from various customers, including Crystal Steel, and then re-selling the metal.

5. Yale Strogoff was the President and sole shareholder of S. Strogoff and Co., a resident of Marblehead, MA and active in the day-to-day management of S. Strogoff & Co.

### The Conspiracy

6. Beginning sometime prior to December 14, 1995 and continuing until at least April 15, 2001, in Middleton, Marblehead, Chelsea and elsewhere in the District of Massachusetts, the defendant herein,

JOHN J. DIAMONT, JR.,

did knowingly, willfully and unlawfully combine, conspire and agree with another individual known to the Grand Jury (hereinafter "the co-conspirator") to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service (hereinafter "IRS") of the United States Department of Treasury, in the ascertainment, computation, assessment and collection of the revenue: to wit, income taxes.

7. The essence of the conspiracy was an agreement and

understanding between defendant DIAMONT and the co-conspirator to defraud the United States in connection with the sale of scrap metal by Crystal Steel to S. Strogoff & Co., by paying Crystal Steel approximately one-third of the funds due for scrap metal by means of a check payable to Crystal Steel, and the remaining approximately two-thirds of the funds in cash (U.S. currency), which was hand-delivered to defendant DIAMONT, which he would pocket, use for his own personal purposes, and not declare as income on his personal income tax return.

8.   Pursuant to this conspiracy, defendant DIAMONT received approximately $290,000 in unreported income and failed to pay approximately $120,000 in income taxes.

### Manner and Means

Defendant DIAMONT and the co-conspirator used the following manner and means, among others, to accomplish the objects of the conspiracy:

9.   S. Strogoff & Co. delivered empty dumpsters to Crystal Steel for the collection of scrap metal.

10.   Crystal Steel put scrap metal in the empty dumpsters. When the dumpster was approaching being full, Crystal Steel notified S. Strogoff & Co, which dispatched a truck driver to pick-up the full dumpster and deliver a new empty one. This occurred two to four times per week on average.

11.   Each load of scrap metal which S. Strogoff & Co. picked

up at Crystal Steel was weighed and each company maintained records relating to those weights.

12. Approximately every four to eight weeks defendant DIAMONT and the co-conspirator would speak and agree to settle-up. At that time defendant DIAMONT would tell the co-conspirator what portion of the money which was due to Crystal Steel for the scrap metal which had been picked up he wanted by check and what portion in cash. This split was usually approximately one-third by check and two-thirds in cash.

13. The co-conspirator would cause S. Strogoff & Co.'s office manager to prepare a weigh slip, with the name Crystal Steel, which listed each load of scrap metal received from Crystal Steel since the last time the two companies had settled up, along with a reduced price per ton which, when multiplied by the total weight, would generate the amount of money defendant DIAMONT had requested by check. The office manager would also prepare a check, in the amount shown on the weigh slip, and payable to Crystal Steel. The check, along with a copy of the weigh slip, were then mailed to Crystal Steel and recorded in its books and records as revenue.

14. Following the conversations with defendant DIAMONT referred to in paragraph 12 above, the co-conspirator would cause S. Strogoff & Co.'s office manager to prepare a second weigh slip, in the name of a fictitious payee, usually with the

initials "J.D.," and in an amount equal to the amount of money which defendant DIAMONT had requested in cash. The office manager would also prepare a check in the amount of the second weigh slip, and payable to the name of the fictitious payee on the weigh slip, and provide the check to the co-conspirator, who would cash it, usually at the bank on which it was drawn.

15. Defendant DIAMONT and the co-conspirator would meet, usually at either defendant DIAMONT'S home or the co-conspirator's home, and the co-conspirator would give defendant DIAMONT cash (U.S. currency) in the amount of the second invoice and the check made payable to the fictitious payee.

16. Defendant DIAMONT received the cash (U.S. currency) from the co-conspirator for Crystal Steel's scrap metal, used this money for his own personal purposes, and failed to declare this money as income on his personal income tax return.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, defendant DIAMONT and the co-conspirator performed the following overt acts, among others, or willfully caused them to be performed, in the District of Massachusetts:

17. From time to time, the co-conspirator caused S. Strogoff & Co. to deliver an empty dumpster to Crystal Steel for the collection of scrap metal.

18. From time to time, defendant DIAMONT caused Crystal

Steel to notify S. Strogoff & Co. that the dumpster was filing up and needed to be removed and replaced with a new empty dumpster.

19. Approximately every four to eight weeks, defendant DIAMONT spoke with the co-conspirator, they agreed to settle-up, and defendant DIAMONT told the co-conspirator how much of the amount due for Crystal Steel's scrap metal he wanted by check and how much he wanted by cash.

20. Approximately every four to eight weeks, the co-conspirator caused S. Strogoff & Co. to prepare and mail to Crystal Steel a weigh slip and check which understated the amount of money which S. Strogoff & Co. was paying for Crystal Steel's scrap metal.

21. Approximately every four to eight weeks, defendant DIAMONT and the co-conspirator met, usually at defendant DIAMONT's or the co-conspirator's home, and the co-conspirator gave defendant DIAMONT cash (U.S. currency) in an amount equal to the balance due for Crystal Steel's scrap metal. Defendant DIAMONT used this money for his personal purposes.

22. Sometime shortly after August 8, 2000, the co-conspirator called defendant DIAMONT, told him that the co-conspirator was under investigation by the IRS, and that he needed to discontinue paying him in cash for Crystal Steel's scrap metal.

23. For each year during the period 1996 to 2000, defendant DIAMONT filed a false U.S. Individual Income Tax Return (Form

1040) with the IRS, in that the return failed to report as income the substantial quantities of cash which defendant DIAMONT had received from the co-conspirator for Crystal Steel's scrap metal.

(All in violation of Title 18, United States Code, §371.)

COUNTS TWO TO FOUR (False Tax Returns - 26 U.S.C. §7206(1))

The Grand Jury further charges:

24. Paragraphs 1 to 6 of this Indictment are incorporated herein by reference, as if set forth in full.

25. On or about each of the dates set forth below, in the District of Massachusetts, the defendant herein,

JOHN J. DIAMONT, JR.,

a resident of Marblehead, MA, did willfully make and subscribe a joint U.S. Individual Income Tax Return (Form 1040) with his wife, for the year indicated, which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the Internal Revenue Service, which said joint U.S. Individual Income Tax Return (Form 1040) he did not believe to be true and correct as to every material matter, in that the said joint U.S. Individual Income Tax Return (Form 1040) failed to include as income the cash set forth below as unreported cash income, which defendant DIAMONT had received from the co-conspirator for Crystal Steel's scrap metal, as follows:

| Count | Date    | Tax Year | Unreported Cash Income |
|-------|---------|----------|------------------------|
| 2     | 4/13/99 | 1998     | $71,844                |
| 3     | 4/10/00 | 1999     | $46,315                |
| 4     | 4/15/01 | 2000     | $33,540                |

(All in violation of Title 26, United States Code, §7206(1).)

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
PETER A. MULLIN
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; June 16, 2005.

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

**Criminal Case Cover Sheet**                                     U.S. District Court - District of Massachusetts

Place of Offense: Massachusetts    Category No. I    Investigating Agency  IRS

City  Marblehead                   Related Case Information:

County  Essex                      Superseding Ind./ Inf. _____   Case No. _____
                                   Same Defendant _____   New Defendant _____
                                   Magistrate Judge Case Number _____
                                   Search Warrant Case Number _____
                                   R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  John J. Diamont, Jr.                 Juvenile   ☐ Yes   ☒ No

Alias Name  _____

Address  73 Harbor Avenue, Marblehead, MA 01945

Birth date (Year only): _____  SSN (last 4 #): 8592  Sex M  Race: W   Nationality: _____

Defense Counsel if known:  Michael Kendall      Address: 28 State Street
                                                         Boston, MA 02109 (617/535-4085)

Bar Number: _____

**U.S. Attorney Information:**

AUSA  Peter A. Mullin                              Bar Number if applicable _____

Interpreter:   ☐ Yes  ☒ No        List language and/or dialect: _____

Matter to be SEALED:   ☐ Yes  ☒ No

      ☐ Warrant Requested       ☒ Regular Process        ☐ In Custody

**Location Status:**

Arrest Date: _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

Charging Document:    ☐ Complaint    ☐ Information    ☒ Indictment

Total # of Counts:    ☐ Petty ____   ☐ Misdemeanor ____   ☒ Felony  4

Continue on Page 2 for Entry of U.S.C. Citations

☐  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 6/16/05      Signature of AUSA:  *Peter A. Mullin*