```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )    CRIMINAL NO. 05-10154-MLW
     v.                      )
                             )
JOHN J. DIAMONT, JR.,        )
          Defendant          )
```

GOVERNMENT'S OPPOSITIONS TO DEFENDANT'S
MOTIONS FOR PRETRIAL SUBPOENAS AND TO IMPOUND
<u>PORTIONS OF HIS MEMORANDUM IN SUPPORT OF SUCH MOTION</u>

<u>Introduction</u>

Defendant John J. Diamont, Jr. has moved, pursuant to Fed. R. Crim. P. 17(c), for a pre-trial return date of October 31, 2005 for certain third-party subpoenas duces tecum he wants to issue. Deft's Motion, p.1. He also asks that the Court order that the subpoenas, and any documents obtained in response thereto, "be kept confidential and revealed to the government only to the extent that the defendant decides to use them as trial exhibits in his case-in-chief." <u>Id</u>. In addition, the defendant has moved pursuant to Local Rule 7.2 to impound portions of his memorandum in support of his motion for pretrial subpoenas, on the ground that the memorandum "contains information relating to his theory of the case." Deft's Motion to Impound, p.1.

The United States opposes both of the defendant's motions. Contrary to the defendant's assertions, the United States has standing to object both to proceeding on an <u>ex</u> <u>parte</u> basis in this matter and to issuing subpoenas returnable prior to trial. The defendant has failed to articulate any facts justifying proceeding on

an ex parte basis. From what the United States can gleam from the portions of the defendant's memorandum it received, it appears that the requested subpoenas are nothing more than a fishing expedition for impeachment evidence, in contravention of United States v. Nixon, 418 U.S. 683 (1974). The defendant has provided no justification as to why any documents obtained by subpoena returnable prior to trial should not be equally available to both sides.[1]

### Factual Background

The defendant is the President of Crystal Steel Corporation, a Massachusetts corporation which processes and distributes metal products. From the early 1990's until 2003 Crystal Steel sold the scrap metal it generated to S. Strogoff & Co., a Chelsea, MA scrap metal dealer.

The defendant is charged with conspiring from prior to December 14, 1995 until at least April 15, 2001 to defraud the United States by impairing and impeding the Internal Revenue Service in the administration of the tax laws, in violation of 18 U.S.C. §371. The

---

[1] On August 24, 2005 the Court entered an electronic order granting the defendant's motion to impound portions of his Memorandum in Support of his Motion for Pretrial Subpoenas. After the United States requested an opportunity to be heard on the issue of impoundment the Court entered an August 30, 2005 electronic order permitting the Government to file a motion to unseal portions of the defendant's memorandum. The United States prefers to file this opposition to the motion to impound to make it clear that it is the defendant's burden to justify the impoundment. If this procedure is not acceptable to the Court the United States requests that this pleading be deemed a motion to unseal as well as an opposition.

essence of the conspiracy alleged is an agreement that S. Strogoff & Co. would pay Crystal Steel "approximately one-third of the funds due for scrap metal by means of a check payable to Crystal Steel, and the remaining approximately two-thirds of the funds in cash (U.S. currency) ... which [the defendant] would pocket, use for his own personal purposes, and not declare as income on his personal income tax return."  Indictment, ¶7.  The defendant is also charged with three counts of subscribing to false individual tax returns, for the years 1998 to 2000, in violation of 26 U.S.C. §7206(1).

    The United States expects to call Yale Strogoff, the President of S. Strogoff, & Co., to testify at trial that beginning prior to December 14, 1995 and continuing until August 2000, he had an agreement with defendant Diamont to pay him approximately one third of the money due for Crystal Steel's scrap metal in the form of a check, made payable to Crystal Steel, and mailed to Crystal Steel's office in Middleton, MA, and the remaining two thirds in cash (U.S. currency) hand delivered to Diamont, either at Diamont's home or Strogoff's home.  Both Diamont and Strogoff lived in Marblehead, MA at the time.  The United States expects to offer records of S. Strogoff, & Co. to corroborate Yale Strogoff's testimony, including checks, made payable to fictitious payees, which were cashed to generate the currency for the cash payments to Diamont.

    Prior to the return of the indictment counsel for defendant Diamont has told the United States the defendant denies ever

receiving any cash from Yale Strogoff.  Counsel has said that he expects to be able to undermine the credibility of Yale Strogoff and show that if Strogoff was generating cash in connection with S. Strogoff & Co.'s purchase of Crystal Steel's scrap metal, Yale Strogoff was either pocketing the money himself, or using it to pay other customers.  Defendant's counsel has said that he plans to do a full financial investigation of Yale Strogoff.  Counsel has identified other customers of Strogoff who were being paid in cash.

Pursuant to automatic discovery in this case the United States has made available to the defendant all of te records it gathered by subpoena from S. Strogoff & Co., as well as all of the records it has gathered from banks and other third parties relating to Yale Strogoff.  In addition, the United States has made certain tax returns of Yale Strogoff and S. Strogoff Co. available to the defendant.

<u>Applicable Legal Principles</u>

Fed.R.Crim.P. 17(c) provides, in pertinent part:

(c)   **Producing Documents and Objects**.

    (1)   **In General.**  A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

The Supreme Court has said that Rule 17(c)'s "chief innovation was to expedite trial by providing a time and place <u>before</u> trial for the

inspection of the subpoenaed materials." Bowman Diary Co. v. United States, 341 U.S. 214, 220 (1951)(emphasis in original). The Court has also said a "fundamental characteristic" of Rule 17(c) subpoenas duces tecum returnable prior to trial is that they are "not intended to provide a means for discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 698 (1974) citing Bowman Dairy Co., 341 U.S. at 220.

The "may direct" language in the second sentence of Rule 17(c)(1) confers discretion on the court to determine the time of production prior to the trial. United States v. Beckford, 964 F.Supp. 1010, 1020 (E.D. Va. 1997). Courts and commentators have generally recognized that a party seeking to issue a subpoena duces tecum returnable prior to trial must move the court for permission to do so. Id. at 1020-25; United States v. Finn, 919 F. Supp. 1305, 1329 (D. Minn. 1995); United States v. Santiago-Lugo, 904 F.Supp. 43, (D.P.R. 1995); United States v. Urlacher, 186 F.R.D. 550, 554-55 (S.D.N.Y. 1991); 2 Wright, Fed. Practice and Procedure, Crim. 3d § 274, p. 245 (West 2000).

In United States v. Nixon, 418 U.S. at 699-700, the Supreme Court set out the required showing for a subpoena duces tecum returnable prior to trial:

> in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and

>inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

The Supreme Court specifically noted in Nixon that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." Id. at 701. The burden is on the party seeking production to show good cause for production prior to trial. United States v. Beckford, 964 F.Supp. at 1022; 2 Wright, Fed. Prac. & Proc., Crim. 3d 274, p. 246, n. 27; United States v. Leiberman, 608 F.2d 889, 904 (1st Cri. 1979)("moving party must show, among other things, that the material he seeks in evidentiary and relevant.")

Rule 17(c) does not expressly provide for ex parte applications for subpoenas duces tecum returnable prior to trial. The question as to whether Rule 17(c) authorizes the court to issue subpoenas duces tecum returnable prior to trial on an ex parte basis "is not a settled one." United States v. Beckford, 964 F.Supp. at 1015. The United States has found no authority within the First Circuit directly on point. Some courts have held that ex parte applications are generally improper for Rule 17(c) subpoenas duces tecum returnable prior to trial. United States v. Finn, 919 F.Supp. 1305 (D. Minn. 1995); United States v. Najarian, 164 F.R.D. 484 (D. Minn. 1985); United States v. Hart, 826 F.Supp. 380 (D. Colo. 1993); United States v. Urlacher, 136 F.R.D. 550 (W.D. N.Y. 1991). Other courts have found that Rule 17(c) does permit ex parte applications for

6

subpoenas duces tecum returnable prior to trial. United States v. Daniels, 95 F.Supp.2d 1160, 1163-64 (D. Kan. 2000); United States v. Tomison, 969 F.Supp. 587, 588-95 (E.D. Cal. 1997); United States v. Jenkins, 895 F.Supp. 1389 (D. Haw. 1995); United States v. Reyes, 162 F.R.D. 468 (S.D.N.Y. 1995). The Beckford court, in a particularly comprehensive consideration of the issue, 964 F.Supp. at 1025-31, concluded that Rule 17(c) authorizes ex parte procedures for insurance of pretrial subpoenas duces tecum "only in exceptional circumstances." Id. at 1030. The court went on to state that "a party seeking to proceed ex parte will have to meet a heavy burden to proceed in that fashion." Id.

### Argument

I.   The United States has standing to object to the defendant's motions for pretrial subpoenas duces tecum and to proceed ex parte.

The defendant boldly asserts in his Motion for Pre-Trial Subpoenas that "[t]he government has no standing to object to the requested subpoenas." Deft's Motion, p.1. In his memorandum in support of his motion the defendant argues that "[b]ecause the government has no claim of privilege or proprietary interest in the requested materials, it has no standing to challenge [his] requested subpoenas ...." Memo in Support, p.7. What the defendant fails to recognize, however, is the difference between motions requesting the court to exercise its discretion to set a pretrial return date for subpoenas duces tecum, and to proceed on an

7

ex parte basis, on the one hand, and a motion to quash a subpoena as "unreasonable or oppressive," pursuant to Rule 17(c)(2), on the other hand.  All of the case law cited by the defendant addresses standing to file a motion to quash.  At this point the United States is not seeking to file a motion to quash any of the requested subpoenas, because it does not know to whom the requested subpoenas are directed nor what documents the subpoenas request.  It is seeking, however, to address the court's exercise of its discretion regarding pretrial return dates and proceeding ex parte.

The defendant has cited no case law holding that the United States has no standing to object to his requests to proceed ex parte and to set a pretrial return date for his requested subpoenas duces tecum.  The Supreme Court implicitly recognized the Government's standing to object here, when it allowed the criminal defendants in the Nixon case to participate in the President's appeal of the denial of his motion to quash the Rule 17(c) subpoena served on him.  United States v. Nixon, 418 U.S. at 686.  Similarly the First Circuit implicitly recognized the Government's standing when it allowed the Government to participate in a third party's appeal from the denial of its motion to quash a defendant's Rule 17(c) subpoena in a criminal case.  United States v. The La Rouche Campaign, 841 F.2d 1176, 1183 (1st Cir. 1988).  The United States has legitimate, actual interests at issue here in the defendant's requests for the exercise fo judicial discretion, including (1) whether ex parte proceedings are appropriate; (2) whether the defendant has met the requirements

8

of Rule 17(c) for a return date prior to trial; and (3) whether the documents obtained by a subpoena returnable prior to trial should be equally available to both sides.

    II.   The Defendant has failed to meet his <u>burden for justifying proceeding ex parte.</u>

In <u>United States v. Beckford</u>, a case relied upon by the defendant here, the court, while concluding that ex parte applications for subpoenas duces tecum were permitted, said:

> a party seeking to proceed <u>ex</u> <u>parte</u> will have to meet a heavy burden to proceed in that fashion.

964 F. Supp. at 1030.  Here the defendant seeks to impound his memorandum in support of his motion for pretrial subpoenas on the ground that it "contains information relating to his theory of the case."  Memo in Support, p.1.  No further detail or justification is provided.  This conclusory assertion fails to meet defendant's "heavy burden" to justify proceeding on an <u>ex</u> <u>parte</u> basis.

The defendant seems to suggest that he has an absolute privilege to prepare his case in secret and can not be required to disclose anything about his trial plans until after the government has rested its case. Memo in Support, pp. 7-8.  This is not the case.  Courts regularly require defendants to disclose the names of prospective witnesses in advance of trial, so that jurors can be questioned about whether they know the witness.  Courts also routinely require defendants to disclose exhibits in advance of trial.  See Fed. R. Crim. P. 16(b)(1)(A).  Here the defendant has voluntarily told the

9

Government of many of his plans to discredit Yale Strogoff. The defendant has failed to meet his "heavy burden" for impounding his memorandum here.

> III. The defendant has failed to meet his burden for issuance of subpoena <u>duces tecum returnable prior to trial.</u>

In order to obtain a return date prior to trial, the defendant needs to satisfy each of the four requirements set forth above from the <u>Nixon</u> case. Supra, pp. 5-6. Since the Government was served with only a redacted version of defendant's memorandum, it is impossible for the Government to determine whether the defendant has identified the persons or entities to whom he wants to issue subpoenas returnable prior to trial and whether he has identified the documents he seeks from those persons or entities. Thus the Government can not address whether the requested subpoenas meet the first three elements of the <u>Nixon</u> test. The United States does suggest that the Court can not determine whether the defendant has met these three elements if he has not identified the persons and entities to be served with subpoenas, and provided the schedule of requested records.

The fourth requirement of the <u>Nixon</u> test is that the application for a pretrial return date be made "in good faith and is not intended as a general 'fishing expedition.'" <u>Nixon</u>, 418 U.S. at 700. Given what is disclosed in the redacted memorandum served on the United States, it would appear the defendant has failed to satisfy this requirement. The defendant's memorandum asserts the indictment

alleges "a <u>complex</u> scheme of tax evasion;" that he seeks pretrial subpoenas "due to the <u>complex</u> nature of this case;" and he makes no reference to "<u>complicated</u> financial transactions" being at issue in this case. Deft's Memo in Support, p.1 (emphasis added). Nothing could be further from the truth. This is a very straight-forward case. The Government alleges the defendant was being paid under the table, in cash, for scrap metal his business generated. There are no off-shore accounts here, nominee trusts or shell corporations used as pass-throughs. Defendant's disingenuous assertions of complex financial transactions to justify his subpoena requests suggest he is on a "fishing expedition."

The defendant also asserts that he needs adequate time "to review, analyze and investigate the requested documents." Memo in Support, p.1. This also suggests a fishing expedition. The defendant has suggested a return date of October 31, 2005 which is likely to be many months before the trial, to allow time for a second or third round of subpoenas duces tecum returnable prior to trial. Repeated rounds of subpoenas duces tecum suggests a "fishing expedition," rather than subpoenas for needed evidence.

    IV.   Any documents produced should be
<u>equally available to both sides.</u>

The defendant requests in his motion that any documents obtained pursuant to pretrial subpoenas "be kept confidential and revealed to the government only to the extent that [he] decides to use them as trial exhibits in his case-in-chief." Defendant's Motion, p.1  Thus,

11

the defendant, presumably, seeks to withhold from production any documents he hopes to use in the cross examination of Yale Strogoff. He also seeks to be able to selectively pick exhibits for trial, without making the other documents from the same source available for inspection.

The "chief innovation" of Rule 17(c) was to allow production before trial. <u>Bowman Diary Co.</u>, 341 U.S. at 220. If the trial efficiency contemplated by Rule 17(c) is to be achieved here, all of the documents produced in response to any Rule 17(c) subpoenas must be made available to both sides. If documents have not previously been made available for inspection prior to trial, then delays will be inevitable when the defendant seeks to use some of the documents in the cross-examination of Yale Strogoff. The defendant need not advise the United States as to which documents he plans to use in the cross-examination of Strogoff, thereby disclosing his trial strategy, but the entire universe of documents produced in response to the subpoenas should be made available for inspection and copying. This will expedite the trial without compromising the defendant's attorney work product.

Rule 17(c) entrusts the court with discretion to decide whether the documents produced pursuant to pretrial subpoenas shall be made available to both sides. In <u>United States. v. Daniels</u>, 95F. Supp. 2d 1160, 1164 (D. Kan. 2000), a case relied upon by the defendant here, the court allowed an <u>ex</u> <u>parte</u> application for subpoenas returnable prior to trial, but ordered the defendant to present "all documents

produced by [the subpoena recipient] in response to the subpoenas for inspection by the government." Similarly in <u>United States v. Tomison</u>, 969 F. Supp. at 597, a case heavily relied upon by the defendant here, the court balanced the defendant's right to confidentiality and the need to insure an efficient trial, and ordered:

> defendants may inspect the documents within (30) days of their delivery to the court. Defendants shall determine which documents they actually intend to introduce and shall supply copies to the government at the same time they make their Rule 16 discovery available to the government.

The <u>Tomison</u> court in no way limited the required disclosure to documents the defendant sought to offer in evidence in his case-in-chief. Such an order would have been superfluous, since Fed. R. Crim. P. 16(b)(1)(A) already requires the disclosure of the defendant's trial exhibits for his case-in-chief. In this case the United States requests only that it be allowed to inspect prior to trial all documents produced in response to pretrial subpoenas.

Conclusion

For the foregoing reasons, the defendant's motion to impound should be denied and the United States should be served with the defendant's unredacted memorandum in support of his motion for pretrial subpoenas. Based on the information presently available, the United States believes the motion for pretrial subpoenas should be denied, as a fishing expedition for impeachment evidence. If any

pretrial subpoenas are allowed, all documents produced in response to the subpoenas should be equally available to both sides.

### Request for Oral Argument

Pursuant to Local Rule 7.1(D) the United States requests oral argument as to its oppositions to Defendants Motions for Pretrial Subpoenas and to Impound Defendant's Memorandum in Support of Such Motion.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

By:
                              /s/ Peter A. Mullin
                              PETER A. MULLIN
                              Assistant U.S. Attorney

Dated: September 12, 2005

### CERTIFICATE OF SERVICE

I, Peter A. Mullin, Assistant U.S. Attorney, hereby certify that a true copy of this document was served on counsel of record for the defendant by electronic filing this 12th day of September, 2005.

                              /s/ Peter A. Mullin
                              PETER A. MULLIN
                              Assistant U.S. Attorney