UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN J. DIAMONT, JR. | ) | CRIMINAL NO. 05-10154-MLW |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR DISCOVERY

Pursuant to Federal Rule of Criminal Procedure 16 and Local Rule 116.3, defendant John Diamont moves the Court to compel the government to provide him with certain discovery. Through a meet and confer process in accordance with Local Rule 116.3, counsel have significantly narrowed the issues to be presented to the Court. Mr. Diamont, however, still believes he is entitled to the following discovery that the government has refused to provide.

**I.     PROMISES, REWARDS, OR INDUCEMENTS TO A GOVERNMENT WITNESS**

Yale Strogoff is the government's key witness in this case. The government has withheld discovery concerning the promises, rewards, or inducements it has given to him. Mr. Diamont seeks, based on Local Rule 116.2(B)(1)(c), an order compelling the government to produce forthwith the following information relating to promises, rewards, or inducements the government has given to Yale Strogoff.

**A.     Yale Strogoff's Proffer**

The government agreed to allow Mr. Strogoff to make a proffer as part of his plea negotiation but decided to exclude evidence concerning his customers based outside of Massachusetts and to limit the use of Mr. Strogoff's information against his son Steven Strogoff. These deviations from the normal practice in proffers are promises, rewards, or inducements that

should be fully disclosed.  The Court should order the government to fully describe which non-Massachusetts customers were excluded from the proffer, whether there is criminal culpability for any members of the Strogoff family arising from these customers, and why there was such special treatment.  It should compel the government to produce all information that Mr. Strogoff provided that was not to be used against his son, and to provide a full statement as to the son's criminal culpability.

### B. Mr. Strogoff's Involvement with C&J Trucking

In 1996, the New Hampshire U.S. Attorney's Office contacted Mr. Strogoff for information to assist in its investigation of C&J Trucking ("C&J").  C&J and its two owners eventually pled guilty to federal criminal charges.  The charges arose from C&J allegedly dispatching trucks that were overloaded or whose drivers were overworked, in violation of federal transportation regulations.  A C&J truck crashed into a car and killed several of its occupants in New Hampshire.  C&J had a business relationship with the Strogoff companies.

When the Massachusetts U.S. Attorney's Office charged Mr. Strogoff with the tax conspiracy to which he eventually pled guilty, Mr. Strogoff claimed that the New Hampshire U.S. Attorney's Office had immunized him as part of its investigation of C&J.  Mr. Strogoff filed with Judge Rya Zobel a copy of an immunity letter he claimed that he had signed and that would operate to preclude his prosecution.  Judge Zobel eventually found that Mr. Strogoff had not offered sufficient proof that he had ever been immunized:  the letter Mr. Strogoff supplied had the front page from one version and a page signed by Mr. Strogoff from a second version, and the New Hampshire U.S. Attorney's Office had no record of ever having received the signed page or having signed such an agreement itself.  Mr. Strogoff claimed that he had provided information to the New Hampshire U.S. Attorney's Office, but the office denied that it had ever

interviewed Mr. Strogoff.  The government in this case did not disclose Mr. Strogoff's claim of immunity to Mr. Diamont, but it provided some such information after Mr. Diamont discovered Mr. Strogoff's immunity claim and made a written inquiry.

One reason that the Constitution requires the government to produce to the defendant all promises, rewards, and inducements is because they are relevant to a witness's state of mind.  If Mr. Strogoff thought that he had been immunized, Mr. Diamont is entitled to know the full details of the benefit Mr. Strogoff claimed he had received.   In particular, Mr. Diamont asks that the Court compel the government to disclose the details of Mr. Strogoff's involvement with the issues involved in the C&J prosecution.

   **C.**  **Relevant Conduct Withheld from Mr. Strogoff's Pre-Sentence Report**

Mr. Strogoff skimmed several million dollars in cash from his businesses.  The government charged Mr. Strogoff with a *Klein* conspiracy from 1996 to 1998 for his role in assisting one customer, the Kradin brothers and their company, in evading taxes.  The government stated that Mr. Strogoff's offense with the Kradins started before 1996.  The government also claims that Mr. Strogoff was involved in tax evasion with other customers (besides the allegations against Mr. Diamont).

Under Federal Sentencing Guideline § 1B1.3, all of the taxes evaded as a result of Mr. Strogoff's conduct arguably are relevant conduct.  In its version of the offense offered in Mr. Strogoff's pre-sentence report, the government apparently only provided a tax loss for the Kradins' evasion between 1996 and 1998.  The government did not argue that the pre-1996 tax loss from the Kradins was relevant conduct for purposes of Mr. Strogoff's guidelines calculation, or that the tax loss from Strogoff's other customers was relevant conduct.  The government's decision to withhold this information from the pre-sentence report is clearly a promise, reward,

or inducement that had a significant impact on Mr. Strogoff's sentence. The government has agreed to provide Mr. Diamont with copies of the tax loss calculations it showed to Mr. Strogoff's counsel. This is insufficient as it still understates the sentence Mr. Strogoff was able to avoid.

Mr. Diamont is entitled to know the full extent of Mr. Strogoff's criminal liability and how much of a benefit the government gave to Mr. Strogoff. Mr. Diamont moves the Court to compel the government to disclose all calculations of all tax evasion in which Mr. Strogoff was a knowing participant, or that arguably constituted relevant conduct. This should include the amounts of income and evaded taxes, the taxpayer's identity, the timeframe, and a description of the means of the evasion. This production should include all Special Agent Reports and Revenue Agent Reports that describe the evasion. To the extent the government is aware of any taxes evaded by Mr. Strogoff, his family, or his businesses, it should disclose the same information for those evasions as well.

## II.  OTHER EXCULPATORY EVIDENCE

### A.  Information from Mr. Strogoff's Plea Negotiations

1) The government produced an affidavit of Internal Revenue Service Revenue Agent Tim Saunders, in which Mr. Saunders states that at a July 19, 2002, meeting, Mr. Strogoff's attorney disputed the government's description of Mr. Strogoff's offense, in particular the alleged tax evasion by Mr. Diamont. Mr. Diamont asks the Court to compel the government to produce a complete description of how the government described the offense and what Mr. Strogoff's counsel said.

2)    Paragraph 12 of Mr. Saunders' affidavit states that Mr. Strogoff's counsel volunteered to disclose evidence about others involved in Mr. Strogoff's criminal acts. The government should disclose who he identified.

3)    The government gave Mr. Strogoff two letters, dated June 5 and June 20, 2002, as part of the plea negotiations. Mr. Diamont seeks copies.

4)    The government gave Mr. Strogoff weigh slips, checks, and other records for him to use to outline his tax scheme and his accusations against others. Mr. Diamont would like all such documents produced and identified.

B.    **CTR/8300/SAR Forms**

Mr. Strogoff and his son generated an estimated $1.4 to $2 million a year in cash by cashing checks drawn on Strogoff business accounts at the Broadway National Bank. Many of these checks Mr. Strogoff and his son made payable to fictitious persons. Mr. Diamont had no role or participation in cashing any of the Strogoffs' checks at the Broadway National Bank. The government has claimed, at Mr. Strogoff's guilty plea, that Mr. Strogoff violated money laundering laws by structuring cash transactions so as to cause the bank to fail to file Currency Transaction Reports ("CTRs"). His son did this as well. In addition, Mr. Strogoff may have spent cash at non-financial institutions in a way that evaded the creation of the comparable Form 8300. Both forms are created to track transactions of $10,000 or more in cash. In addition, the Broadway National Bank may have filed Suspicious Activity Reports ("SARS") for the Strogoffs' transactions under $10,000. Mr. Strogoff and his son Steven Strogoff apparently evaded the creation of such forms for their transactions and other transactions involving the Strogoff companies.

BST99 1477044-1.073607.0010

Mr. Diamont moves that the Court order the government to produce all CTRs, 8300 Forms, SARs, and other cash reporting forms created by the Bank Secrecy Act for Yale Strogoff, Steven Strogoff, the Strogoff companies, and any of their employees from 1996 to 2005. Mr. Diamont also seeks the production of all evidence the government has of the number, date, and details of transactions for which the Strogoffs evaded the creation of such reports. The government failed to charge either the Strogoffs or their companies with these criminal offenses, which makes such treatment a promise, reward, or inducement. This evidence is also directly material to the generation of cash that is part of the issue in this case. The U.S. Attorney's Office has some CTRs for 1996 to 1998 and has offered to make those available. It refuses to request additional forms that are on file with the U.S. Treasury Department. The forms filed in 1999 through 2005 are in the government's possession at the Treasury Department and readily accessible. The Court should compel their production.

WHEREFORE, Mr. Diamont asks the Court to order the government to provide him with all of the foregoing discovery.

Respectfully submitted,

John Diamont

By his attorneys,

 /s/ Lauren M. Papenhausen
Michael Kendall (BBO #544866)
Lauren M. Papenhausen (BBO #655527)
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109
(617) 535-4000

Dated:  November 17, 2005

BST99 1477044-1.073607.0010

## CERTIFICATION PURSUANT TO LOCAL RULE 116.3(F)

Pursuant to Local Rule 116.3(F), the undersigned counsel for defendant John Diamont hereby certifies that defense counsel have conferred with counsel for the government and have attempted in good faith to resolve or narrow the issues presented in this Motion.

                                           /s/ Lauren M. Papenhausen

BST99 1477044-1.073607.0010