**REDACTED**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO.
05-10154-MLW

UNITED STATES OF AMERICA

v.

JOHN J. DIAMONT, JR.

**MEMORANDUM OF DECISION AND ORDER**
**ON DEFENDANT'S MOTION FOR PRE-TRIAL SUBPOENAS**

November 22, 2005

DEIN, U.S.M.J.

## I. INTRODUCTION

The defendant, John J. Diamont, Jr. ("Diamont"), was indicted on June 16, 2005 for conspiracy to commit tax fraud in violation of 18 U.S.C. § 371. The matter is presently before the court on the Defendant's Motion for Pre-Trial Subpoenas (Docket No. 13), pursuant to which the Defendant is seeking permission, *ex parte*, to issue a number of pre-trial subpoenas pursuant to Fed. R. Crim. P. 17(c). For the reasons detailed herein, this court finds that Rule 17(c) authorizes the *ex parte* issuance of subpoenas where, as here, disclosing the contents of the requested subpoena would reveal the defendant's strategy. Moreover, this court rejects the Government's argument that it is entitled to review the requested documents when they are produced. Rather, the Defendant shall produce the documents in accordance with the Local Rules for production of all materials prior to trial. Nevertheless, the Defendant's motion is ALLOWED IN PART and DENIED IN PART, as this court finds that some of the subpoenas constitute attempts to obtain broad discovery, and go beyond that

**REDACTED**

authorized by law. The part of this decision addressing the specific subpoenas will be filed under seal.

## II. STATEMENT OF FACTS[1]

Diamont is the President of Crystal Steel Corporation, a Massachusetts corporation which processes and distributes metal products. From the early 1990's until 2003, Crystal Steel sold its scrap metal to S. Strogoff & Co., a scrap metal dealer located in Chelsea, Massachusetts.

Diamont is charged with conspiring to commit tax fraud from before December 14, 1995 until at least April 15, 2001. Specifically, the Government contends that there was an agreement whereby S. Strogoff & Co. would pay Crystal Steel for scrap metal in the following manner — one-third of the amount due by check, and two-thirds of the amount due in cash. The Defendant then allegedly would pocket the cash and use it for his own personal purposes, and not declare it as income on his personal tax return. In addition to conspiracy to commit tax fraud, Diamont is also charged with three counts of subscribing to false individual tax returns, for the years 1998 to 2000, in violation of 26 U.S.C. § 7206(1).

Yale Strogoff ("Strogoff") is the president and sole shareholder of S. Strogoff & Co. Strogoff is expected to be a principal witness for the Government. In addition to testifying about the payment arrangement described above, Strogoff is also expected to testify that he hand delivered the cash to Diamont. The Government intends to offer records of S. Strogoff & Co. to support Strogoff's testimony, including checks made

---

[1] As the Defendant's Memorandum is filed under seal (Docket No. 15), the facts are taken from the Government's Oppositions to Defendant's Motions for Pretrial Subpoenas and to Impound Portions of His Memorandum in Support of Such Motions ("Opp.") (Docket No. 19).

**REDACTED**

payable to fictitious payees that were cashed, allegedly to generate the funds to pay Diamont.

It is undisputed that Diamont denies ever having received cash from Strogoff. According to the Government, it has been informed that defense counsel

> expects to be able to undermine the credibility of Yale Strogoff and show that if Strogoff was generating cash in connection with S. Strogoff & Co.'s purchase of Crystal Steel's scrap metal, Yale Strogoff was either pocketing the money himself, or using it to pay other customers. Defense counsel has said that he plans to do a full financial investigation of Yale Strogoff. Counsel has identified other customers of Strogoff who were being paid in cash.

(Opp. at 4). As part of its automatic discovery obligations, the Government has produced all the records of S. Strogoff & Co. which it obtained by subpoena, as well as all the records it has obtained from banks and other third parties relating to Yale Strogoff. It has also made certain tax returns of Strogoff and his company available to the Defendant.

The Defendant filed his motion for pre-trial subpoenas on August 22, 2005, without identifying in detail the information being sought. The Government filed its opposition on September 12, 2005. After briefing was completed, a hearing was held on October 19, 2005. On October 28, 2005, the Defendant filed drafts of the subpoenas he proposes to issue. While the Defendant's legal arguments have been presented in unsealed documents and in open court, the details of the information being sought and the trial strategy justifying the subpoenas have been filed under seal.

**REDACTED**

### III.  ANALYSIS

A.  **Standards for Issuing Subpoenas**

Fed. R. Crim. P. 17(c) provides in relevant part as follows:

> (c) Producing Documents and Objects.
>
>   (1)  In General.  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

By now it is well established that there are "certain fundamental characteristics of the subpoena *duces tecum* in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, [and] its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." United States v. Nixon, 418 U.S. 683, 698-99, 94 S. Ct. 3090, 3103, 41 L. Ed.2d 1039 (1974) (internal citations omitted).  The standard for obtaining documents pre-trial was originally formulated in United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952), and was adopted in United States v. Nixon.  Thus, it is now generally recognized that:

> in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. at 699-700, 94 S. Ct. at 3103.  See also United States v. Lieberman, 608 F.2d 889, 904 (1st Cir. 1979) (court adopts standard set forth in

-4-

**REDACTED**

United States v. Iozia).  As detailed below, applying this standard requires that some of the requested subpoenas be modified.

### Availability of Ex Parte Relief

As an initial matter, the Government challenges the defendant's ability to obtain the subpoenas *ex parte*, either as a matter of law or based on the facts of this case. This court finds that proceeding on an *ex parte* basis, at least as to the grounds for the subpoenas being sought, is appropriate in this case.

Rule 17(c) does not address whether subpoenas can be obtained on an *ex parte* basis, and there are no First Circuit decisions on point.  See generally United States v. Beckford, 964 F. Supp. 1010, 1025-1026 (E.D. Va. 1997) (collecting cases).  After a review of this matter, this court concludes that *ex parte* proceedings are available under Rule 17(c) both based on the language of the Rule and for policy reasons.  "Forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process." Id. at 1027.

The issue of "whether Rule 17(c) provides for an ex parte application for a subpoena duces tecum to be served on a third party seeking pretrial production of documents" has been addressed in a number of cases cited by the parties, and this court will not belabor the point, especially since the Government does not seem to seriously contend that proceeding on an *ex parte* basis is never appropriate.  See United States v. Daniels, 95 F. Supp. 2d 1160, 1662 (D. Kansas 2000) ("A fair reading of the text and the policy behind Rule 17(c) reveals the legislative intent to provide for ex parte proceedings").  This court finds the thorough analysis of the issue in United

**REDACTED**

States v. Tomison, 969 F. Supp. 587 (E.D. Cal. 1997) to be persuasive. As detailed more fully therein, the permissive language of Rule 17(c) which provides that a court "may" order the production of documents and "may" permit inspection by the adverse party "empowers the court to deny an adverse party the opportunity to inspect the documents" and, "[s]ince prohibiting a party access to the documents may have the same practical effect as denying it the opportunity to know that such documents were subpoenaed, the Rule's structure appears to anticipate the possibility of an ex parte request." Id. at 591. Furthermore, "the fact that a criminal defendant has both a right to the pre-trial production of evidence and a right to protect his trial strategy, contraindicates a noticed motion practice requiring disclosure to the government of the defendant's theory of the case as a precondition to obtaining subpoenas duces tecum under Rule 17(c)." Id. at 593. For these reasons, this court concludes that a party may seek subpoenas on an *ex parte* basis under Rule 17(c).

The Government also contends that, even if authorized by Rule 17(c), an *ex parte* order is inappropriate in the instant case. Furthermore, the Government argues that it is entitled to review the documents as they are produced, regardless of what use, if any, the Defendant intends to make of the documents at trial. With the exception of certain specific subpoenas identified below, this court finds both of these arguments unpersuasive.

While the Defendant has provided the Government with an overview of his defense in this case, by informing it that he intends to challenge Strogoff's credibility, this court finds that if the Defendant had to reveal the identity of the witnesses from whom the information is being sought, and, more importantly, the factual basis for his

request for information, the Defendant would be forced to provide the details of his trial strategy. "[I]n support of an *ex parte* application, the requesting party must still demonstrate to the court that the subpoena meets the *Nixon* standards." United States v. Beckford, 964 F. Supp. at 1028. Accordingly, "a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the Nixon standards." United States v. Daniels, 95 F. Supp.2d 1160, 1163 (D. Kan. 2000) (quoting United States v. Reyes, 162 F.R.D. 468, 470 (S.D.N.Y. 1995)). Having reviewed the pleadings submitted by Diamont, this court concludes that the materials filed under seal do "contain information that is considered 'trial strategy'" and that, consequently, they were appropriately filed *ex parte* and under seal. See id.[2]

Finally, the Government contends that it should be able to view all the documents produced in response to pretrial subpoenas, and that it should review them when produced to the Defendant. This court disagrees. Our Local Rules provide for the orderly production of information before trial. Once the documents are in the Defendant's possession, he shall produce them in accordance with the timing requirements of the Local Rules. This court sees no reason why the Government should be provided with information that would otherwise not be discoverable by the Government simply because the material was obtained by way of a subpoena.[3]

---

[2] With respect to certain specific subpoenas, this court has concluded that while the explanation for the subpoena may remain confidential, there is no reason to keep the subpoena itself, as authorized by the court, confidential.

[3] The Government relies on United States v. Daniels, where the defendant was ordered to produce all documents produced in response to a subpoena for inspection by the government. 95 F. Supp. 2d at 1164. In that case, however, the court expressly held that the witness had already provided the government with the subpoena so there was no longer any need for secrecy as to the information being sought. Id. No similar situation exists in the present case. The Government also argues that United States v. Tomison requires the

**REDACTED**

In sum, Diamont proceeded appropriately in the instant case, and his pleadings and proposed subpoenas shall remain under seal. The balance of this decision and order relate to the specific information being sought and shall be issued under seal.

**FILED UNDER SEAL**

### IV.  CONCLUSION

The Defendant shall provide the court with subpoenas revised in accordance with this opinion. To the extent that requests for subpoenas have been denied, the denial is without prejudice to a further showing by the Defendant.

       / s / Judith Gail Dein
JUDITH GAIL DEIN
United States Magistrate Judge

---

production of documents beyond that required by the applicable rules. In <u>Tomison</u>, the defendant was to supply copies to the government of all documents the defendants actually intended to introduce at trial at the time they made their Rule 16 discovery. 969 F. Supp. at 597. The Government argues that this is in fact broader than that required by our Local Rules. Notably, however, the <u>Tomison</u> defendant was not ordered to produce all documents which were provided in response to the subpoenas. In the instant case, the Defendant shall produce the documents he intends to use at trial in accordance with the applicable Local Rules. This court does not see any reason why the Government should be entitled to any more. If this production is insufficient in the instant case, the Government may seek a different pretrial production schedule from the District Judge.