UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | |
| JOHN J. DIAMONT, JR. | ) ) | CRIMINAL NO. 05-10154-MLW |
| Defendant. | ) ) ) | |

**DEFENDANT'S MOTION TO FILE DOCUMENTS UNDER SEAL AND *EX PARTE***

Defendant John Diamont moves, pursuant to Local Rule 7.2, for leave of Court to:

a.      File under seal, with service on the government, the Memorandum in Support of Defendant's Motion *In Limine* to Exclude Disputed Invoices and Disputed Checks (the "Memorandum");

b.      File under seal and *ex parte*, with service of a redacted copy on the government, the First Affidavit of Michael Kendall in Support of Defendant's Motion *In Limine* to Exclude Disputed Invoices and Disputed Checks (the "First Affidavit"); and

c.      File under seal and *ex parte*, with service of a redacted copy on the government, the Second Affidavit of Michael Kendall in Support of Defendant's Motion *In Limine* to Exclude Disputed Invoices and Disputed Checks (the "Second Affidavit").

In support of this Motion, the defense states:

1.      The defense has served a full, unredacted copy of this Motion, the Motion *In Limine*, and the Memorandum on the government. The defendant seeks leave to file the Memorandum under seal until the conclusion of any testimony concerning the admissibility of the Disputed Evidence. If the Memorandum is not sealed, government witness Yale Strogoff

- 2 -

likely will tailor his testimony in response to the details described in the Memorandum. The defense concedes the government has a right to prepare Strogoff to testify. However, Strogoff has a propensity for falsehoods (*see, e.g.*, the Memorandum's description of Strogoff's false claims that the government had immunized him). Thus, it would be best if Strogoff did not have a document he could use to contour his testimony.

2.  The defense has served a redacted copy of the First Affidavit on the government. It seeks leave to keep the full Affidavit *ex parte* and under seal until the conclusion of the presentation of evidence on Defendant's Motion *In Limine*. At that time, the defense proposes to serve on the government all portions of the First Affidavit that discuss exhibits or testimony presented at the evidentiary hearing on Defendant's Motion *In Limine*.

3.  In order to present an extremely compelling case to hold an evidentiary hearing, the defense has provided extensive defense work product, in the form of its analysis of the government's exhibits and witnesses, in the First Affidavit. The First Affidavit discusses only exhibits and witnesses known to the government. It is not unfair to delay disclosure to the government of the defense analysis, as the government has had an equal opportunity to review the same evidence and come to the same conclusions. It is unprecedented for the government to get such a road map to the defense's theories and strategies before a hearing or trial. The defense asks that the Court assess the First Affidavit only to determine if a hearing should be held, and not rely on any portion of the *ex parte* filing in ruling on the Motion *In Limine*.

4.  The defense believes that the First Affidavit provides a sufficient basis to warrant an evidentiary hearing. If the Court is not inclined to grant the hearing after considering the First Affidavit, however, the defense asks the Court for leave to file the Second Affidavit *ex parte* and under seal. The defense has served a redacted copy of the Second Affidavit on the government.

The defense seeks leave to keep the Second Affidavit *ex parte* until the conclusion of the presentation of the evidence on the Motion *In Limine*. At that time, the defense proposes to serve on the government all portions of the Second Affidavit that discuss exhibits or testimony presented at the evidentiary hearing.

5.  The Second Affidavit describes the testimony of witnesses the defense intends to call at the evidentiary hearing, depending on how the government's witnesses testify. This is critical defense work product material, and premature disclosure to the government would be highly unfair to the defense.

6.  The defense realizes it is unusual to present two affidavits in this contingent way. However, this procedure seems the best way to minimize the *ex parte* presentation of defense work product. The fact that the defendant needs to proceed in this way is due in large part to the unusual way in which the government has handled Strogoff.

7.  Strogoff has generated millions of dollars in cash from his business over 15 years or more. Strogoff has performed much of this cash generation at a notorious money launderer, Heller's Café, and at a bank repeatedly connected to money laundering. When caught, Strogoff told the government a facially untenable story: all the cash went to others, and he did not owe any taxes, interest, or penalties. Strogoff also did not disclose his extensive criminal conduct.

8.  The government bought this pig in a poke with little investigation, which conveniently gave it a sanitized witness to use in other cases, without having generated significant impeachment evidence. The government did not employ the standard IRS investigative tools: it never conducted an audit or net worth and expenditures analysis of Strogoff. It did not question Strogoff's son, who picked up at least $500,000 in cash according to Currency Transaction Reports and is an active participant in the business and its cash

generation. The government apparently did not unearth the Strogoffs' extensive fraudulent behavior that the defense has gathered on a shoe string.

9. To compound its problem, the government scheduled Strogoff's sentencing so it occurred before his cooperation was complete. The government now has little leverage over Strogoff, and the defense understands that Strogoff is not currently cooperating with the government or disclosing information to it. If the government has created a situation where it cannot get full and complete information from a witness to whom it gave a § 5K departure, it should not seek highly confidential defense work product to solve this foreseeable but self-inflicted problem.

10. The Court is fully capable of weighing the affidavits to determine if an evidentiary hearing would be helpful, and then disregarding them in deciding the Motion *In Limine*.

WHEREFORE, the defendant requests that the Court permit him to (a) file the Memorandum under seal; (b) file the First Affidavit *ex parte* and under seal, with service only of a redacted version on the government; and (c) file the Second Affidavit *ex parte* and under seal, with service only of a redacted version on the government. The defendant further requests that those documents be maintained under seal and *ex parte*, as described above, until after all evidence on Defendant's Motion *In Limine* has been presented.

                      Respectfully submitted,

                      JOHN DIAMONT

                      By his attorneys,

                      /s/ Lauren M. Papenhausen
                      Michael Kendall (BBO #544866)
                      Lauren M. Papenhausen (BBO #655527)
                      McDERMOTT WILL & EMERY LLP
                      28 State Street
                      Boston, MA 02109
                      617-535-4000
                      Fax: 617-535-3800
                      mkendall@mwe.com
                      lpapenhausen@mwe.com

Dated: April 21, 2006

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

Pursuant to Local Rule 7.1(A)(2), the undersigned counsel for defendant John Diamont hereby certifies that defense counsel have conferred with counsel for the government and have attempted in good faith to resolve or narrow the issues presented in this Motion.

                      /s/ Lauren M. Papenhausen

## **CERTIFICATE OF SERVICE**

I, Lauren M. Papenhausen, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 21, 2006.

                      /s/ Lauren M. Papenhausen

BST99 1500099-1.073607.0010