UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIM. NO. 05-10154-MLW |
| | ) |
| JOHN J. DIAMONT, JR. | ) |
| | ) |
| DEFENDANT | ) |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO FILE DOCUMENTS UNDER SEAL AND EX PARTE

Introduction

Defendant John J. Diamont, Jr. has requested leave of Court to (1) file under seal, with

service on the government, his Memorandum in Support of Defendant's Motion In Limine to

Exclude Disputed Invoices and Disputed Checks (the "Memorandum"); (2) file under seal, and

ex parte, an Affidavit of his attorney discussing what the defense thinks it can prove at an

evidentiary hearing in connection with his motion to exclude certain disputed evidence ("First

Kendall Affidavit"); and (3) file under seal, and ex parte, a second affidavit of his attorney

summarizing the expected testimony of witnesses the defense is prepared to call at an evidentiary

hearing on his motion to exclude disputed evidence ("Second Kendall Affidavit"). The

defendant filed no memorandum in support of his motion, see Local Rule 7.1 (B)(1) requiring a

memorandum, and cites no legal authority in his motion supporting the relief he requests.

The United States opposes the defendant's motion. The defendant has not cited any facts,

or a single legal authority, warranting the extraordinary relief he requests. What the defendant

proposes is fundamentally unfair. He wants the Court to order, based solely on ex parte

affidavits from his attorney, that the government should have to call to testify, months in advance

of trial, at least two of its principal witnesses against him, so that he can hear their testimony and

get a chance to cross examine them, out of the presence of the jury. All of this because the defendant mistakenly believes he has a basis to exclude some routine business records.

    I.      The Defendant Has Failed To Demonstrate Any
              Reason Why His Memorandum Should Be Filed Under Seal

      In his motion the defendant argues that, if his Memorandum in support of his motion for an evidentiary hearing is not sealed, then "government witness Yale Strogoff likely will tailor his testimony in response to the details described in the Memorandum." Motion, ¶1, pp. 1-2. Yet, the defendant points to no details in his Memorandum which are, in his view, likely to induce such "tailoring". The defendant asserts that Mr. Strogoff "has a propensity for falsehoods," yet, in support of this very serious allegation, he refers the Court only to the section of his Memorandum discussing Mr. Strogoff's Motion to Dismiss the indictment filed against him. Id. at p.2. As set forth below, Mr. Strogoff's actions in connection with his Motion to Dismiss are inconsistent with a "propensity for falsehoods". The defendant concedes, as he must, that the government has a right to prepare Mr. Strogoff to testify." Id. This presumably means the government can discuss with Mr. Strogoff the matters raised in the defendant's Memorandum. If the United States can discuss these matters with Mr. Strogoff, what is the purpose for sealing the Memorandum?

      The defendant has utterly failed to back up his allegations that Mr. Strogoff has a "prosperity for falsehoods" and thus can not be trusted to see what the defendant has said in his Memorandum. Even worse, the section of the Defendant's Memorandum on which the defendant relies to support his request for sealing is disingenuous and misleading. See Memorandum, pp. 7-8.

2

The Strogoff Motion to Dismiss was signed by Mr. Strogoff's attorney, William A.

Brown, Esquire. Memorandum , Exh. D, p.2. There is no indication that Mr. Strogoff ever saw

this document or played any role in its preparation. Thus, it has no probative value with regard to

Mr. Strogoff's truthfulness.

Defendant Diamont, in his Memorandum, quotes the first four and a half lines of the

Strogoff motion, Memorandum, p.7, but omits those portions of the motion which indicate that

the motion was conditional and a request for discovery. The full paragraph of the Strogoff

Motion to Dismiss, from which defendant Diamont quotes only a portion, is as follows:

> Now comes defendant Yale Strogoff, and moves to dismiss
> the above referenced case. As grounds for this motion, defendant
> Yale Strogoff states he was granted immunity. Defendant Yale
> Strogoff, after numerous conversations and correspondences with
> the U.S. Attorney's Office in New Hampshire, received a grant of
> immunity in exchange for his cooperation with the investigation
> into the C&J Trucking Inc., case no. 97-cr-129. This current case in
> Massachusetts involves conspiracy with the Kradins. If Strogoff
> mentioned the Kradins, or his relationship with them, he would be
> immunized. Therefore, Mr. Strogoff requests that his Motion be
> Granted for the following reasons:

Memorandum, Exh. D, p.1 (emphasis added.) The Motion to Dismiss goes on to argue that under

Kastigar v. United States, 406 U.S. 441 (1972), once the defendant shows that he previously

provided information pursuant to an immunity agreement, the burden shifts to the government to

demonstrate it has an independent, legitimate source for all the evidence it will offer at trial. Id.

at pp. 1-2. The Strogoff Motion to Dismiss then states:

> In order to determine the basis of the government's conspiracy
> claims against the Defendant, the Defendant respectfully requests
> that the government [produce] all statements, information and
> testimony that was obtained by the government with respect to
> the C&J Trucking Co., Inc. case no. 97-cr-129. Without such

3

> information, it cannot be determined if the government fulfilled
> its constitutional requirement and met its burden of obtaining
> information and evidence from a source independent of and untainted
> by the immunized testimony given by the Defendant. This is a
> major requirement provided for in the 5[th] Amendment of the
> Constitution and the precedent set in Kastigar, which has been
> adopted by this circuit. Without information to the contrary,
> this case must be dismissed because of defendant Strogoff's
> immunity.

Id. at p.2.

Assistant U.S. Attorney Arnold Huftalen prosecuted the C&J Trucking Co. case in NH. In 2003 he filed an affidavit in the Strogoff case, acknowledging that in 1996 he discussed a Non Prosecution Agreement with Mr. Brown, relating to Yale Strogoff, that they exchanged drafts of an agreement by fax, but stating he had no memory of there ever being a fully executed agreement, or Mr. Strogoff being debriefed or testifying pursuant to such agreement, and there was no such fully executed agreement in his file. Exhibit 1, attached, p.3, ¶s 10-14.

Rather that indicating a "propensity for falsehoods," the Strogoff Motion to Dismiss indicates the exact opposite. Prior to filing the Motion to Dismiss, Strogoff's attorneys had twice filed motions for discovery relating to the C&J Trucking matter and a Memorandum in Support of the second motion. See Exhibits 2 (¶10), 3 and 4, attached. The United States opposed both motions for discovery as to the C&J Trucking matter, specifically pointing out that Mr. Strogoff had failed to file any affidavit in support of his motion. Exhibit 5, attached, p.2. Rather than responding with an affidavit, Mr. Strogoff never filed an affidavit, as the defendant concedes. Memorandum, p.7. A person with a "propensity for falsehoods" would have filed an affidavit claiming (1) he had seen a fully executed Non Prosecution Agreement; (2) he had been debriefed in the C&J Trucking matter; and/or (3) he had mentioned the Kradins in his debriefing. Yale

4

Strogoff claimed none of those things. The fact that Judge Zobel ultimately denied his Motion to
Dismiss is no way indicates Mr. Strogoff had filed any false statements or that he has a
"propensity for falsehoods". Deft's Memorandum, p.8.

If the Court where to grant defendant's request for an evidentiary hearing, and leave the
defendant's Memorandum under seal, it will cast a pall over the government's preparation of
Yale Strogoff, should we choose to call him to testify at any such hearing. It will be unclear what
we can say to him, or show him, regarding any matters contained in the Memorandum, and not
be accused of improper "tailoring." Leaving the Memorandum under seal will also give at least
tacit approval to defendant's assertion that Mr. Strogoff has a "propensity for falsehood." We
believe the defendant has utterly failed to demonstrate any valid reason why the Memorandum
should remain under seal and urge the Court to unseal it immediately.

II.     The Defendant Has Failed to Demonstrate Any Reason Why The
        First Kendall Affidavit Should Be Filed Under Seal and Ex Parte.

The defendant seeks extraordinary relief from the Court. He wants to have an evidentiary
hearing, five months in advance of trial, in which he expects the United States to call two of its
principal witnesses (Yale Strogoff and Jane Lemelin), and he will get to see them testify on direct
examination and then have an opportunity to cross-examine them. Such a procedure offers
tremendous tactical advantages to the defense, including the opportunity to try out various lines
of cross-examination, outside of the presence of the jury.

Even more surprisingly, the defendant seeks to get this extraordinary relief based solely
on an ex parte affidavit from his attorney, which purports to analyze the government's exhibits
and witnesses. It is not clear to us how the defendant's counsel can analyze the government's

5

exhibits, since we have not even selected them yet, nor how he knows what witnesses we will call or what those witnesses will say, since we have not yet designated any witnesses or provided any Jencks Act material.[1]

The only rationale articulated by the defendant for this non-adversarial process is that "[i]t is unprecedented for the government to get such a road map to the defense's theories and strategies before a hearing or trial." Motion, p.2, ¶3. This is not correct. The overwhelming majority of defense motions to exclude evidence are litigated on an adversarial, not ex parte, basis. It is the defense which is the moving party here. It is the defense which is seeking unprecedented relief. It is the defense which has the burden of convincing the Court to adopt this unprecedented procedure. It is entirely appropriate to require that the defense arguments, as to why this unprecedented procedure should be adopted, be subjected to opposing party review and comment, before the procedure is adopted.

The defendant argues that this process is not unfair to the government because the government "has had an equal opportunity to review the same evidence and come to the same conclusions." Motion, p.2, ¶3. What the defendant ignores is that we may have reviewed the same evidence and come to different conclusions. Holding such an pretrial evidentiary hearing is a matter entrusted to the sound discretion of the Court. Before the Court exercises that discretion, the United States should have the opportunity to comment upon defendant's alleged factual basis for this unprecedented relief. If there is any valid reason to have an evidentiary

---

[1]The fallacy and danger of the defendant's proposed, ex parte, procedure is highlighted by the only defense factual assertions disclosed to us. In the First Kendall Affidavit (Redacted Version), pp. 2-3, ¶a, the defendant asserts "many of the Disputed Invoices purport to involve scrap pick-ups from S. Strogoff Money Market or Prudential Money Market...." This is not correct and demonstrates that the defense does not understand the documents it has reviewed.

6

hearing here, and if there is any proper reason to exclude the disputed evidence, those reasons will survive the adversarial process. There is no reason to decide the question of whether to have an evidentiary hearing on an <u>ex parte</u> basis. There is certainly no reason to decide whether to exclude the disputed evidence in a trial-by-ambush.

III.    The Defendant Has Failed to Demonstrate Any Reason Why The
<u>Second Kendall Affidavit Should Be Filed Under Seal and Ex Parte.</u>

The defendant argues in his motion that if the First Kendall Affidavit does not convince the Court to grant the extraordinary evidentiary hearing he requests, then the Court should grant the hearing on the basis of the Second Kendall Affidavit. Motion, pp.2-3, ¶4. This second affidavit is said to summarize the testimony of witnesses the defendant would call if the government's witnesses "testify falsely." Second Kendall Affidavit (Redacted Version), ¶2. Presumably the defendant believes that he should be the one to decide if witnesses have testified falsely.

The defendant argues it would be "highly unfair to the defense" to require the information in the Second Kendall Affidavit to be submitted to adversarial review before it is considered by the Court on the question of whether an evidentiary hearing is necessary here. Motion, p.3, ¶5. On the contrary, fairness requires that the government be permitted to see and respond to all of the information being considered by the Court on the question of whether an evidentiary hearing is needed here. Such a procedure is the essence of our adversarial process.

The defendant concedes the process he proposes is "unusual," but argues it seems to him to be "the best way to minimize the <u>ex parte</u> presentation of defense work product." Motion, p.3, ¶6. On the contrary, the best way to minimize the <u>ex parte</u> presentation of information would

7

have been not to file the First or Second Kendall Affidavit. Under our adversarial process, if the defendant wants what he perceives as the advantages of putting this information before the Court on the question of whether there should be an evidentiary hearing, then he must accept the fact that his information will be subjected to review and rebuttal by the opposing side.

The defendant seeks to justify his extraordinary proposed procedure, by arguing it is necessitated by the way the government has handled Strogoff. Motion p.3, ¶6. Nothing could be further from the truth. The defendant claims to know what Mr. Strogoff told investigators. Id. at ¶7. He does not, what he has asserted about what Strogoff told us is incorrect, and we do not know of any basis at this point for the defendant to know what Mr. Strogoff has told us. The defendant wrongly suggests that net worth and expenditures methods of analysis are standard IRS investigative tools with defendants and cooperating witnesses such as Strogoff. Id. at ¶8. They are not. Very few defendants are prosecuted on the basis of net worth and expenditure cases, and fewer yet are the number of witnesses investigated in this way. Contrary to the defendant's assertions, Judge Zobel scheduled Yale Strogoff's sentencing date, not the United States, and the defendant's purported understanding that Mr. Strogoff is not now cooperating with the United States, or disclosing information to it, is not correct. Id. at ¶9.

## Conclusion

The defendant's request to file his Memorandum under seal should be denied and the Court should direct the Clerk to file the Memorandum on the public record immediately. As to the First and Second Kendall Affidavits, if the Court and its staff have not yet reviewed them, the Court should give the defendant the option to withdraw the affidavits and his request for an evidentiary hearing. If the motion and the affidavits are not withdrawn, or if the Court or its staff

8

have reviewed them, the Court should order them to be served on the United States by the Clerk.

The United States respectfully requests an opportunity to review the Kendall affidavits before

taking a position as to whether they should be filed on the public record.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:    /s/ Peter A. Mullin
PETER A. MULLIN
Assistant U.S. Attorney

Dated: May 11, 2006


### Request for Oral Argument

Pursuant to L.R. 7.1(D), the United States requests oral argument on this motion.

### Certificate of Service

I, Peter A. Mullin, Assistant U.S. Attorney, hereby certify that a true copy of this
document was served on counsel of record for the defendant by electronic filing this 11th day of
May, 2006.


/s/ Peter A. Mullin
PETER A. MULLIN
Assistant U.S. Attorney

9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )    Criminal No. 03-10198-RWZ
           v.            )
                         )
YALE STROGOFF,           )
        Defendant        )

GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO
DEFENDANT'S SECOND MOTION FOR DISCOVERY AND INSPECTION

This memorandum supplements the Government's September 26, 2003 Opposition to Defendant's Second Motion for Discovery and Inspection.  After that Opposition was filed the undersigned Assistant U.S. Attorney received from defense counsel a "Memorandum in Support of Defendant's Motion For Discovery and Inspection," which included an attached Exhibit A, which purports to be a November 22, 1996 letter from Arnold H. Huftalen, Assistant U.S. Attorney, District of New Hampshire, to Yale Strogoff, subject: Nonprosecution Agreement.  This Supplemental Opposition will address the matters raised in defendant's memorandum.

Factual Background

The defendant asserts in his memorandum:

> In a letter originally dated November 22, 1996, and faxed to undersigned counsel on December 3, 1996, the Government signed a "Nonprosecution Agreement" in the State of New Hampshire.

Defendant's Memo, p.1.  At another point in his memorandum defendant asserts:

Exhibit 5

> This letter was signed and agreed to by the government
> and Yale Strogoff on December 6, 1996.  (See Exhibit A,
> attached hereto.)

Id. at p.2.

The letter attached to the defendant's memorandum served on

the United States is a three page document.  The first page is

dated November 22, 1996.  The second page has a handwritten

annotation to paragraph 6 which states "or the District of

Massachusetts," and appears to be initialed by Mr. Brown and Mr.

Strogoff.  The third page has a signature space for AUSA

Huftalen, but is unsigned by Mr. Huftalen.  Immediately below Mr.

Huftalen's typed name is the date November 20, 1996.  This third

page appears to have been signed by Mr. Strogoff, but the

signature is undated.  The motion is not supported by an

affidavit from Mr. Strogoff, or his counsel, setting forth any

information relating to the circumstances relating to the

agreement he alleges.

The Defendant Has Failed To Allege
Sufficient Facts To Find An Agreement

Although the defendant alleges in his memorandum that

"[t]his letter was signed ... by the government ... on December

6, 1996," the face of the document contradicts that assertion.

The letter is unsigned by any representative of the United

States.  The third page, which appears to bear the signature of

Mr. Strogoff, has a different date than the first page of the

2

letter.  The defendant has failed to explain the handwritten addition to the letter of the words "or the District of Massachusetts" in paragraph 6, on page 2, or how AUSA Huftalen from New Hampshire could act for the District of Massachusetts.

The undersigned Assistant U.S. Attorney has been in touch with the U.S. Attorney's Office in New Hampshire relating to this matter.  The files of the C&J Trucking Co. Inc. case have been reviewed and no signed Nonprosecution Agreement with Yale Strogoff has been found.  In particular, no copy of a November 20 or a November 22, 1996 letter to Yale Strogoff, signed by Arnold H. Huftalen, has been found.  Nor has any copy been found of a November 20 or November 22, 1996 letter from Mr. Huftalen to Yale Strogoff, purporting to bear the signature of Mr. Strogoff.

The United States does not contest that there were some discussions in 1996 between the U.S. Attorney's Office for the District of New Hampshire and Mr. Brown, on behalf of Yale Strogoff, relating to compliance with a subpoena for records relating to the C&J Trucking matter.  We have not found any evidence, however, that this nonprosecution agreement was ever executed by Mr. Huftalen, or Mr. Strogoff, or that the typed letter was ever expanded to include the District of Massachusetts or that an executed letter was ever faxed back to the U.S. Attorney's Office in New Hampshire.

3

<u>Conclusion</u>

The defendant has failed to show that the interview reports he seeks are relevant to the pending indictment.  The fundamental premise of his argument for relevance is that there was a Nonprosecution Agreement, in 1996, which involved the District of Massachusetts.  He has failed to show any such agreement.

For the foregoing reasons, and those contained in our original Opposition, defendant's second Motion for Discovery and Inspection should be denied.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                    By:      _____
                              PETER A. MULLIN
                              Assistant U.S. Attorney

Dated: September 30, 2003

<u>CERTIFICATE OF SERVICE</u>

    I, Peter A. Mullin, Assistant U.S. Attorney, hereby certify that I have caused a copy of the foregoing document to be served on counsel of record for each other party by mail this 30th day of September, 2003.

                              _____
                              PETER A. MULLIN
                              Assistant U.S. Attorney

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO:03-10198-RWZ.

UNITED STATES OF AMERICA )
)
v. )
)
YALE STROGOFF )
)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION

Now comes the defendant, Yale Strogoff, in the above-captioned matter and respectively submits, pursuant to Fed. R. Crim. 16 and Rules 116.1 of the Local Rules of United States District Court for the District of Massachusetts, the following memorandum in support of Defendant's previous Motion for Discovery and Inspection. That motion requested that this Honorable Court order the government to furnish to the defendant the following: All interviews and debriefing of Yale Strogoff in the United States Attorney's Office in Concord, NH , stemming from the investigation in the District of New Hampshire involving C&J Trucking Co.,Inc., case no. 97-cr-129. This Honorable Court should grant defendant's motion for the reasons set forth below.

<u>Facts</u>

Defendant Yale Strogoff was indicted by a Grand Jury on June 5, 2003 in the District of Massachusetts. A prior investigation in and around 1996 in New Hampshire involved Yale Strogoff's cooperation with United States Attorney's Office in New Hampshire. In a letter originally dated November 22, 1996, and faxed to undersigned counsel on December 3, 1996, the government signed a "Nonprosecution Agreement" in the State of New Hampshire. This agreement was made in turn for Yale Strogoff's cooperation in the then ongoing investigation in the District of New Hampshire involving C&J Trucking Co., Inc. This agreement specifically stated that "It is understood that if you fully comply with the terms and conditions of this agreement, and continue to render full cooperation and completely truthful testimony, no charge will be placed against you



Exhibit 4

by the United States Attorney's Office for the District of New Hampshire or the District of Massachusetts for any violation of federal laws, relating to the ongoing investigation or revealed by you during your cooperation except for any crime(s) of violence." (letter dated November 22, 1996, faxed December 3, 1996 p.2) This letter was signed and agreed to by the government and Yale Strogoff on December 6, 1996. (see Exhibit A, attached hereto.) Yale Strogoff then gave interviews to the United States Attorneys Office in New Hampshire, as a result of this nonprosecution agreement.

## Standard of Review

In the case of Kastigar v. United States, 406 U.S.441 (1972), the Supreme Court held that, "Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." Id. at 453. In addition, the Court further held that, "We conclude, moreover, that in order to implement this constitutional rule and accommodate the interest of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits." Id. at 456.

## Application

The evidence derived directly and indirectly from compelled testimony is afforded protection. In this case, the compelled testimony may have lead to the infliction of criminal penalties on Yale Strogoff as a witness. This is why this Honorable Court must grant defendant's motion to make available all interviews of Yale Strogoff stemming from that investigation.

## Conclusion

Yale Strogoff prays that this Honorable Court allow his motion to Discovery and Inspection, attached hereto, and filed on September 16, 2003.

Yale Strogoff
by his attorney,

William A.  Brown
31 Milk Street, 5th Floor
Boston, MA  02109

## CERTIFICATE OF SERVICE

I, William A. Brown, hereby certify that I have served the foregoing motion on Assistant United States Attorney, Peter Mullin, by first class mail on this the 25 day of September 2003

William A. Brown



**U.S. Department of Justice**

*United States Attorney*
*District of New Hampshire*

*Federal Building*
*55 Pleasant Street, Room 312*
*Concord, New Hampshire 03301*                            *603/225-1552*

**November 22, 1996**

Yale Strogoff                                    **SENT VIA FAX AND U.S. MAIL**
c/o William Brown, Esquire
50 Milk Street, 19th floor
Boston, MA 02109

**NONPROSECUTION AGREEMENT**

Dear Mr. Strogoff:

This letter will serve to memorialize an agreement reached between you and the United
States Attorney's Office for the District of New Hampshire (herein after the "government"). It is
understood that this agreement is made with a view to your cooperating with the government in
ongoing criminal investigations in the District of New Hampshire involving C&J Trucking Co.,
Inc.

Based upon your attorney's representation that you will assist the federal government and
law enforcement agencies conducting the investigation, the government hereby agrees to extend
to you the following terms and conditions:

1. No testimony or other information provided by you to government attorneys or law
enforcement officers or any federal grand jury conducting this investigation, or to the Court,
whether in the nature of testimony or debriefing interviews or active cooperation with law
enforcement officers, will be used against you in any criminal case, except a prosecution for
perjury of giving a false statement or subsequent obstruction of justice, should you give false
information or testimony. If you should violate the terms of this agreement, any such testimony
or other information provided by you to attorneys or investigators may, and will, be used against
you. No statements or other information provided by you shall be deemed to be precluded from
use against you in the event of your breach of this agreement. In the event of breach of this
agreement, you shall be subject to prosecution not only for perjury or giving a false statement, but
also for any federal criminal violations of which the government has any knowledge. This
agreement covers all information provided by you, in any form, from the date you began your
cooperation with the government, which is the date of this agreement.

EX A

2. This agreement is in lieu of a formal immunity order under 18 U.S.C. Section 6001, et seq. This agreement does not and shall not be construed to impose any duty or limitation, except as expressly set forth herein, on the government beyond that which would be imposed if a formal immunity order were to be issued by the U.S. District Court, immunizing any information or testimony you provide.

3. You must supply complete and truthful information to the attorneys and law enforcement officers of the government. You must supply completely truthful testimony to any federal grand jury conducting this and related investigations, as well as in any other proceeding related to or growing out of this investigation, including all court and jury trials. You must answer all questions concerning the subject matter and identities of persons involved in this and related investigations, and must not withhold any information. You must neither attempt to protect any person or entity through false information or omission, nor falsely implicate any person or entity.

4. No statements made by you during your cooperation will be used against you, if you do not breach this agreement. The government may make derivative use of and may investigate any leads provided by your information, and use any information derived from those leads against other persons. Also, if you at any time testify contrary to any information you provide to investigators, all statements made by you may be used to cross-examine you.

5. This agreement is limited to those statements made by you concerning acts committed prior to the date of this agreement, and does not limit in any way the right or ability of the government, to prosecute any offenses which you may commit after the date of this agreement. This agreement is also not applicable to any violent crimes you may have committed prior to this agreement of which the government is unaware.

6. It is understood that if you fully comply with the terms and conditions of this agreement, and continue to render full cooperation and completely truthful testimony, no charges will be placed against you by the United States Attorney's Office for the District of New Hampshire for any violations of federal laws, relating to the ongoing investigation or revealed by you during your cooperation except for any crime(s) of violence. If you have engaged in any crime(s) of violence you can and will be prosecuted regardless of any other provisions of this agreement.

7. Any breach of this agreement will be determined in the sole discretion of the United States Attorney for the District of New Hampshire.

8. This agreement constitutes the full and complete understanding among the parties. There shall be no modification to this agreement unless made in writing and signed by all parties.

OR THE DISTRICT OF MASSACHUSETTS

WAB

9.  I, Yale Strogoff, have read this agreement and understand the terms and conditions, and fully and voluntarily agree to them.

Date: _____

Yale Strogoff

PAUL M. GAGNON
United States Attorney


By:
Arnold H. Huftalen
Assistant U.S. Attorney


Date:  November 20, 1996

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO:03-10198-RWZ.

_____
UNITED STATES OF AMERICA    )
                            )
v.                          )
                            )
YALE STROGOFF               )
_____)

## MOTION FOR DISCOVERY AND INSPECTION

Now comes the defendant, Yale Strogoff, in the above-captioned matter and respectively moves that this Honorable Court order the government to furnish to the defendant the following:

1. All interviews and debriefing of Yale Strogoff in the United States Attorney's Office in Concord, NH , stemming from the investigation in the District of New Hampshire involving C&J Trucking Co.,Inc., case no. 97-cr-129.

Yale Strogoff
by his attorney,

William A. Brown
31 Milk Street, 5th Floor
Boston, MA  02109

## CERTIFICATE OF SERVICE

I, William A. Brown, hereby certify that I have served the foregoing motion on Assistant United States Attorney, Peter Mullin, by hand on this the 16th day of September 2003

William A. Brown

Exhibit 3

*Filed 9/12/03*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CRIMINAL  NO:03-10198-RWZ

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| YALE STROGOFF | ) |
| | ) |

## MOTION FOR  DISCOVERY AND INSPECTION

Now comes the defendant, Yale Strogoff, in the above-captioned matter and respectively moves that this Honorable Court order the government to furnish to the defendant the following:

1. The name or names and address or addresses of any and all informants who furnished information to the government either knowingly or unknowingly either before, during or after the alleged illegal activity as charged in the indictment.
2. The names and agencies of all agents of the government who have gathered information relative to the investigation of the facts alleged in the instant indictment.
3. The names, addresses and the substances of the testimony of any expert witnesses whom the government intends to call at the trial of the above-captioned indictment, and the field of expertise of each such witness.
4. Copies of all criminal records, if any, of any witness or witnesses to be called by the government in a trial of the above indictment.
5. The names and addresses of all witnesses who testified before the Grand Jury pertaining to the present indictment.
6. The names and addresses of witnesses known to the government who the government contends have personal knowledge of facts, relevant and material to the matters alleged in the present indictment and/or who the government intends to call at the trial.
7. The names and addresses of any and all informants who furnished information to the government either knowingly or unknowingly either before or after the alleged illegal activity as charged in the indictment.
8. A list of all sums of monies paid to witnesses in the witness protection program along with any services provided to the witnesses and/or the witnesses' families or friends.
9. Disclosure of amounts of money and/or services given to witness or the witnesses' families or friends by the United States of America.
10. All information, material, transcripts and testimony stemming from the investigation in

*Exhibit 2*

the District of New Hampshire involving C&J Trucking Co., Inc., case no. 97-CR-129.

Yale Strogoff
by his attorney,

Kate Miller Brown, Esq.
Law Office of William A. Brown
31 Milk Street, 5th Floor
Boston, MA 02109
BBO # 651123

## CERTIFICATE OF SERVICE

I, Kate M. Brown, hereby certify that I have served the foregoing motion on Assistant
United States Attorney, Peter Mullin, by hand on this the 12th day of September 2003.

Kate Miller Brown

<u>Affidavit</u>

I am an Assistant U.S. Attorney in the District of New Hampshire where I have been so employed since March of 1991. I have reviewed copies of two pleadings filed by the defendant in the case of <u>United States of America v. Yale Strogoff</u>, Criminal No: 03-10198-RWZ; defendant's Motion For Discovery and Inspection with Memorandum in Support, and defendant's Motion to Dismiss. I am the Assistant U.S. Attorney who handled the New Hampshire case of <u>United States v. C & J Trucking, et. al, Cr. No. 97-129-01, 02, 03-B</u> (hereafter "the C & J case") referenced in the defendant's Motions. I have retrieved and reviewed my closed case file from that case. In the ordinary course, closed cases are purged when they are sent to archives. However, a number of items are usually retained, including all correspondence, pleadings, grand jury subpoenas and grand jury transcripts. Based upon my review of that file, my memory of that case and my discussions with the investigating agents, I swear that I have conducted a diligent review and search of my file and that the following is true and correct to the best of my knowledge:

1. The C & J case arose out of a multiple fatality traffic collision which occurred August 2, 1995 on Interstate 93 in Londonderry, New Hampshire. That crash involved a truck, owned an operated by, C & J Trucking, which, while approaching a construction zone, drove into the rear of an automobile. The crash resulted in a fire and the death of several occupants of that automobile.

2. The criminal investigation relating to the fatalities was conducted by the New Hampshire State Police, Sergeant Charles Forsaith. Assisting the State Police were Sergeant Wayne Peasley of the New Hampshire Division of Highway Enforcement and Special Agents Jeffrey Cimahosky and Steven Piwowarski of the then United States Department of Transportation, Office of Motor Carrier, now the U. S. Department of Transportation, Federal Motor Carrier Safety Administration. The latter two agencies deal with highway/trucking safety regulations and compliance.

3. The State of New Hampshire, Rockingham County Attorneys Office, conducted a lengthy and extensive Grand Jury investigation which resulted in an Indictment charging the C & J truck driver with negligent homicide. That investigation included interviews and State Grand Jury testimony of many witnesses. It resulted in the accumulation of more than fifty (50) bankers boxes of records, including but not limited to time cards, driver daily sheets (daily records of driver activities), dispatch logs, truck weight slips, payroll records and bank records. Those records were obtained by requests for production, State Grand Jury subpoenas and a State search warrant. Many of the witnesses were then current and former employees of C & J Trucking.

4. C & J Trucking had a known history of non-compliance with federal hours of service regulations, which limit the total number of hours a truck driver may be on duty. That State investigation developed evidence which tended to prove that C & J Trucking had embarked upon a course of conduct which continued to violate the regulations in a way which made the

Page 1 of 5

Exhibit 1

violations more difficult to detect. This included the submission of fraudulent and altered time cards, which understated the hours on duty. Generally speaking, drivers were paid through the C & J payroll system only for hours which would not appear to be in violation of regulations and were paid with "contract labor checks" for the hours they worked in violation of the hours of service regulations. Consequently, a mere review of the payroll records, which was standard procedure in D.O.T. compliance reviews, would not disclose the violation conduct.

5. On July 18, 1996 a federal Grand Jury investigation was opened in the United States Attorney's Office for the District of New Hampshire, looking into possible violations of Title 18 USC 1001 and various Title 49 (trucking regulation) violations by C & J Trucking and its owners, Charles Georgoulakos, Jr. and James Georgolakos. Ultimately, the company and its two owners plead guilty to Title 49 violations and each received a 12 month split sentence; six months in prison and six months in home confinement. The C & J case was significant in that it was the first case in the United States in which trucking company executives went to prison for hours of service regulation violations. The defendants in that case were represented by Attorneys Martin Weinberg, Steven Gordon and Stephen Delinsky.

6. Due to their familiarity with the facts, the investigators referenced above conducted the investigation in the federal case. Sergeant Forsaith was the only investigator with criminal investigation experience and he continued to be the lead investigator. To the exclusion of the others he maintained the criminal investigative file, conducted interviews and prepared reports of those interviews for inclusion in his continuing report.

7. For a period of time both the State case and the federal investigation ran simultaneously. However, when the truck driver was acquitted after a jury trial all state proceedings ceased and the federal case proceeded. All evidence which had been gathered in the state proceeding was transferred to the federal investigation.

8. During the course of the federal investigation, the former dispatcher of C & J Trucking, William Halberstadt, was interviewed by Sergeant Forsaith on three occasions, August 29, 1996, September 17, 1996 and September 18, 1996. Sergeant Forsaith memorialized each interview with a written report, as was his custom and practice, which was filed in his continuing investigation report. During the second interview on September 17, 1996, Halberstadt provided information concerning two companies with which C & J Trucking had engaged in business and which prior to that time were unknown to the investigation. One of these companies was described by Halberstadt as, Harold Strogoff Iron Metal Corporation, 285 Second Street, Everett, Massachusetts.

9. Virtually identical federal Grand Jury subpoenas were issued to "Keeper of Records Strogoff" and the other company. Those subpoenas were dated October 11, 1996 and served on October 15, 1996. The return date was October 30, 1996. They called for the production of "[a]ny and all records relating in any way to business done with C & J Trucking Co., Inc. and/or ... for the time period of January 1, 1995 to the present." A copy of the subpoena is attached

hereto as Exhibit A.

10. My correspondence file from the C & J Trucking case contains a one page letter to Attorney William Brown, dated November 8, 1996 in which I reference "telephone conversations" and advise Attorney Brown that neither Mr. Strogoff nor his company are targets or subject of my investigation or of any other of which I was aware. The letter requests that the subpoenaed documents be forwarded to me via Federal Express or Registered Mail and that Mr. Strogoff need not at that time appear before the Grand Jury. A copy of the letter is attached as Exhibit B.

11. I have reviewed the document attached to the defendant's Memorandum in support of his Motion for Discovery and Inspection, which is marked as Exhibit A and entitled "Nonprosecution Agreement." All correspondence, outgoing and incoming, including fax cover sheets and fax confirmation sheets, would have been retained in the closed file. I have reviewed the correspondence file and can say that at the request of Attorney Brown I did draft and did fax that draft document to him in November of 1996. The file does contain fax cover sheets and confirmation sheets showing that the draft document was faxed to Attorney Brown and that Attorney Brown faxed it back to me with a request that a change be made. That change was made and the document was again faxed to Attorney Brown. However, the file does not contain a further reply from Attorney Brown, nor does it contain a copy of the document which purports to bear the defendant's signature. Nor does the file contain a copy with the handwritten notations which are included on the copy submitted by the defendant. Those handwritten notations on the copy submitted by the defendant ( "or the District of Massachusetts") are not in my handwriting, were not written by me and do not appear anywhere on any document in my file. Nor are either of the initials which appear on the copy submitted by the defendant my initials.

13. I have no memory of ever having a fully executed Nonprosecution Agreement with Yale Strogoff and have no memory of any interview or debriefing of Mr. Strogoff during the course of the C & J case.

14. Within the last few weeks I have spoken with all four of the investigating agents who have each advised me that they have no memory of any interview or debriefing of Mr. Strogoff in the C & J case.

15. Forsaith, who is no longer with the State Police, has advised me, consistent with my memory, that he was the investigator who would have interviewed or debriefed Mr. Strogoff if such had taken place during the C & J case and that if such an interview or debriefing had taken place he would have memorialized such with a report of interview for inclusion in his investigative file. He has no memory of any such interview of debriefing of Mr. Strogoff. I have reviewed the original New Hampshire State Police investigative file from the C & J case and it does not contain a report of interview concerning Mr. Strogoff.

16. My file shows that on May 4, 1998, and pursuant to my obligations under Bagley and

Page 3 of 5

17.  I am currently handling an investigation into allegations of tax violations by a company and individuals in New Hampshire.  During the course of that investigation I caused a Grand Jury subpoena to be served upon "S. Strogoff & Co., Inc., Chelsea, MA" in April of 2001 seeking documents.  After the subpoena was served, I received a telephone call from Attorney Brown.  I then wrote a letter to Attorney Brown dated April 17, 2001 in which I stated, "I was unaware that Strogoff was your client, or that your client was the subject or target of an ongoing investigation at the time I had a Grand Jury subpoena served upon it.  I have advised the agents working on my case of your representation."  The letter goes on to allow for whatever additional time was required by his client to produce the records and advising Attorney Brown that his client need dot appear before the Grand Jury.  A copy of that letter is attached as Exhibit C.

18.  Thereafter, I had numerous conversations with Attorney Brown and AUSA Sam Buell who was at that time handling the Strogoff investigation in the U.S. Attorney's Office for the District of Massachusetts.  Generally speaking, Attorney Brown wanted to offer his client as a witness in my case in exchange for favorable consideration with respect to AUSA Buell's investigation.

19.  A proffer session was arranged between AUSA Sam Buell and Attorney Brown for Mr. Strogoff.  I was invited to attend, and did attend, that proffer session which took place in the U.S. Attorney's Office in Boston on September 26, 2001.  The letter pursuant to which that proffer took place was drafted by AUSA Buell and was on his office's letterhead.  I signed a handwritten signature line which was added to the letter at the time of the proffer.  A copy of that Letter is attached as Exhibit D.

20.  I have not conveyed any information concerning Mr. Strogoff to the U.S. Attorney's Office for the District of Massachusetts, other than information I have learned from Attorney Brown during the course of the current investigations.  Any of that information necessarily has been learned after April 2001, after I learned of Attorney Brown's representation of Mr. Strogoff in the Massachusetts investigation.  See Exhibit C.

21.  In his Motion to Dismiss, at page 1, paragraph 1, Attorney Brown, when discussing the C & J case, states "[t]he current case in Massachusetts involves conspiracy with the Kradins. If Strogoff mentioned the Kradins, or his relationship with them, he would be immunized."  I have no records to show, nor do I have any memory, that I ever met, interviewed or debriefed Mr. Strogoff during the course of the C & J case.  I have never conveyed any information to the U.S. Attorney's Office for the District of Massachusetts concerning Mr. Strogoff and the Kradins.

Page 4 of 5

October 23, 2003

    With the understanding that this Affidavit will be provided to the United States District Court for the District of Massachusetts in a judicial proceeding now pending, under the pains and penalties of Title 18, United States Code, Sections 1001 and 1503(a), I swear that the information contained herein is true and correct to the best of my knowledge.

Arnold H. Huftalen
Assistant U.S. Attorney
District of New Hampshire

Sworn before me this
date 10/23/03

Clyde R.W. Garrigan
Justice of the Peace
My Comm. expires 11/13/07

Page 5 of 5

AO 110 (Rev. 12/89) Subpoena to Tes... Before Grand Jury

# United States District Court

———————————— DISTRICT OF ____NEW HAMPSHIRE____ ————————————

TO: *KEEPER oF RECORDS oF*
Strogoff

## SUBPOENA TO TESTIFY

| PLACE | COURTROOM |
|---|---|
| Fourth Floor<br>James C. Cleveland Federal Building<br>55 Pleasant Street<br>Concord, NH  03301 | Grand Jury Room |
| | DATE AND TIME |
| | October 30, 1996 9:30 a. |

   YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

Any and all records relating in any way to business done with
C & J Trucking Co., Inc. and/or Spartan Consolidated, Inc. for
the time period of January 1, 1995 to the present.


Compliance can be made be delivering the records to the grand jury
or to Sgt. Charles Forsaith, New Hampshire State Police (603) 672-3333
prior to October 30, 1996.

GOVERNMENT
EXHIBIT
*A - 2PAGES*
*HUFTALEN*

☐ *Please see additional information on reverse*

   This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on
behalf of the court.

| CLERK | DATE |
|---|---|
| (BY) DEPUTY CLERK | October 10, 1996 |

| This subpoena is issued on application<br>of the United States of America<br><br>United States Attorney | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>Arnold H. Huftalen, AUSA<br>U.S. Attorney's Office<br>55 Pleasant St., Room 312<br>Concord, NH  03301<br>(603) 225-1552      Inv. 96R0224 |

*If not applicable, enter "none"*

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

## RETURN OF SERVICE (1)

| RECEIVED BY SERVER | DATE  10/11/96 | PLACE  55 Pleasant St. Concord NH 03301 |
|---|---|---|
| SERVED | DATE  10/15/96 | PLACE  315 THIRD ST. CHELSEA MA 02150 |

SERVED ON (PRINT NAME)

YALE STROGOFF

| SERVED BY (PRINT NAME)  STEVEN M. PIWOWARSKI | TITLE  SPECIAL AGENT USDOT |
|---|---|

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
|  |  |  |

## DECLARATION OF SERVER(2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___10/15/96___
                   Date

_Steven M. Piwowarski_
Signature of Server

_279 Pleasant St Concord NH 03301_
Address of Server

ADDITIONAL INFORMATION

) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.
') "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".



**U.S. Departmt    f Justice**




*United States Attorney*
*District of New Hampshire*

*Federal Building*                                                              *603/225-1552*
*55 Pleasant Street, Room 312*
*Concord, New Hampshire 03301*

November 8, 1996

William Brown, Esq.
50 Milk St.
19th Floor
Boston, MA 02109

<u>VIA FAX ONLY  (617) 426-0490</u>

Re: <u>Strogoff</u>

Dear Attorney Brown:

In follow up to our telephone conversations, please be advised that neither Mr. Strogoff nor his company is a target or subject in any ongoing investigation being conducted by the U.S. Attorney's Office for the District of New Hampshire.  Nor am I aware that he or it is a target or subject of any investigation by any other law enforcement agency or prosecutive office.  The information sought by the Grand Jury in the District of New Hampshire will be used solely in the investigation and possible prosecution of individuals and entities in New Hampshire.  Any information provided by Mr. Strogoff or his company will be maintained in this office under the restrictive limitations imposed by Fed. R. Crim. P. 6(e), and will not be shared with any investigators or prosecutors other than those involved in my investigation.

I hope this letter provides you and your client with sufficient peace of mind.  Should you need to discuss the matter further, I am available at (603) 225-1552 ext. 218.  Otherwise, I will expect to receive the subpoenaed documents via Federal Express or Registered Mail.  Mr. Strogoff need not, at this time, appear before the Grand Jury.

Thank you for your assistance.

Very truly yours,

PAUL M. GAGNON
United States Attorney

By:
Arnold H. Huftalen
Assistant U.S. Attorney

GOVERNMENT
EXHIBIT
B - 1 PAGE
HUFTALEN



**U.S. Department of Justice**

*Roberts*

*United States Attorney*
*District of New Hampshire*

*Federal Building*                                    *603/225-1552*
*55 Pleasant Street, Room 312*
*Concord, New Hampshire 03301*

April 17, 2001

William Brown. Esq.
100 State St.
9th Floor
Boston, MA 02109

     Re: <u>Strogoff</u>

Dear Attorney Brown:

     Please accept this letter in follow up to our recent telephone conversations.  It was a pleasure to speak with you again.

     I was unaware that Strogoff was your client, or that your client was the subject or target of an ongoing investigation at the time I had a Grand Jury subpoena served upon it.  I have advised the agents working on my case of your representation.

     I also understand that your client needs additional time to respond to the document subpoena.  Please let me know when you believe the documents will be available.  Take whatever time you reasonable need.  Obviously, we will not require your client to appear before the Grand Jury at this time.  You may forward the record directly to my attention.

                Very truly yours,

                PAUL M. GAGNON
                United States Attorney

                By:
                Arnold H. Huftalen
                Assistant U.S. Attorney

bcc: Sam Buell



GOVERNMENT EXHIBIT
C - 1 PAGE
HUFTALEN

Sep-26-2001  10:20am  From-                      6177483963         T-322  P.001/002  F-634



"STROGOF F
PROFFER
AGREEMENT"

ROBERTS

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

September 26, 2001

William A. Brown, Esq.
112 Water St.
Boston, MA 02109

        Re:  <u>Yale Strogoff</u>

Dear Mr. Brown:

    This letter confirms that the U.S. Attorney for the District
of Massachusetts will consider an accurate and complete proffer
from your client, Yale Strogoff, in connection with our
investigation of criminal offenses in the scrap materials industry.
The terms under which the contemplated proffer will be received are
as follows:

    1.   No statements made or other information provided by Yale
Strogoff will be used by the U.S. Attorney directly against him or
directly against his son Stephen Strogoff, except for purposes of
cross-examination and/or impeachment should Yale Strogoff offer in
any proceeding statements or information different from statements
made or information provided by him during the proffer, or in a
prosecution of Yale Strogoff based on false statements made or
false information provided by Yale Strogoff.

    2.   The government may make derivative use of, or may pursue
any investigative leads suggested by, any statements made or other
information provided by Yale Strogoff in the course of the proffer.
Any evidence directly or indirectly derived from the proffer may be
used against him and others in any criminal case or other
proceeding.  This provision is necessary in order to eliminate the
possibility of a hearing at which the government would have to
prove that the evidence it would introduce is not tainted by any
statements made or other information provided during the proffer.
See <u>Kastigar v. United States</u>, 406 U.S. 441 (1972).



GOVERNMENT
EXHIBIT
D - 2 PAGES
HUFTALEN

Sep-26-2001  10:21am  From-                            6177483963              T-322   P.002/002   F-634

By: _____

    SAMUEL W. BUELL
    Assistant U.S. Attorney

                                 7-21-01

    ARNOLD H. HUFTALEN AUSA
                 USAO DN.H.

Acknowledged and agreed to:

_____
YALE STROGOFF

                9/26/01
                DATE

_____
WILLIAM A. BROWN
Counsel for YALE STROGOFF

                9/26/01
                DATE

2