```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
       v.                    )    CRIMINAL NO. 05-10154-MLW
                             )
JOHN J. DIAMONT, JR.,         )
                             )
          Defendant          )
```

Government's Reply Memorandum In Support of It's Motion
<u>In</u> <u>Limine</u> to Exclude Evidence of Alleged Criminal Conduct
        of Yale Strogoff Not Resulting In Conviction

In his Opposition to the Government's Motion <u>In</u> <u>Limine</u> to Exclude Evidence of Alleged Criminal Conduct of Yale Strogoff Not Resulting in Conviction, the defendant argues that the alleged criminal conduct at issue in the motion is relevant and admissible on four grounds: (1) to attack Yale Strogoff's character for truthfulness; (2) to show Strogoff's motive and bias; (3) to show a reward or inducement provided to Strogoff; and (4) because the evidence directly negates the underlying events changed in the indictment. Opposition, p.1. The defendant concedes that the admission of such evidence is subject to the balancing test contained in Fed. R. Evid. 403. <u>Id</u>. at 5.

As set forth below, the defendant has utterly failed to demonstrate that this alleged criminal conduct has any probative value as to Yale Strogoff's character for truthfulness. Thus, the evidence is not admissible on that ground. As to the other three alleged grounds for admission, the probative value of the

1

evidence, if any, is substantially outweighed by the dangers of unfair prejudice, confusion of issues, and misleading the jury, and considerations of undue delay and waste of time. Fed. R. Evid. 403. Thus the evidence is not admissible on these grounds either.

## Applicable Legal Principles

Fed. R. Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Determinations under Rule 403, to admit or exclude evidence, are entrusted to the sound discretion of the district court and will be reversed only for an abuse of discretion. United States v. Arboleda, 929 F.2d 858, 866 (1st Cir. 1991); United States v. Gilbert, 229 F.3d 15, 21 (1st Cir. 2000).

In performing the balancing required by Rule 403, the Court must not view each item of proffered evidence as an "island," but rather must "take account of the full evidentiary context of the case." Old Chief v. United States, 519 U.S. 172, 182 (1997)(in felon in possession of firearm prosecution, it was abuse of discretion under Rule 403 to reject defendant's offer to admit prior conviction element of the offense.) Thus, in weighing the probative value and danger of unfair prejudice of a proffered item of evidence, the court must consider the same assessment for

2

"evidentiary alternatives" available to prove the same point. Id. at 184-85; Eichel v. N.Y. Central RR Co., 375 U.S. 253, 254 (1963) (evidence of disability payments plaintiff was receiving was inadmissible to prove malingering, because "there will generally be other evidence having more probative value and involving less likelihood of prejudice."). The Advisory Committee's Notes to Fed. R. Evid. 403 explain that "unfair prejudice" in this rule "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Old Chief, 519 U.S. at 180.

The First Circuit has said "[i]t is well established that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter." United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993). A matter is collateral if "the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness." Id. at 4. "The term 'collateral' for Rule 403 purposes, refers to evidence that is likely to confuse the issues, mislead the jury, or waste time." United States v. Nelson-Rodriguez, 319 F.3d 12, 34 (1st Cir. 2003). The First Circuit has noted that "a court's refusal to introduce collateral issues at trial has been characterized by Holmes as a 'concession to the shortness by life.'" United States v. Foley, 871 F.2d 235,

238 (1st Cir. 1989) quoting, Reeve v. Dennett, 145 Mass 23, 2811 N.E. 938 (1887).

Courts regularly uphold the exclusion of evidence on Rule 403 grounds where there is a substantial risk of confusion of issues, misleading the jury and undue delay, because there will be extensive litigation regarding collateral evidence. United States v. Gilbert, 229 F.3d at 21-25 (in prosecution of nurse for murder and attempted murder of her patients, no abuse of discretion under Rule 403 in excluding evidence of nurse's attempt to murder her husband, based on concern for confusion of issues, misleading the jury and extent to which litigation would be required); United States v. Hill, 322 F.3d 301, 304-06 (4th Cir. 2003) (in investment fraud case, in which defense claimed the victim's money was a gift, and not an investment, it was not abuse of discretion under Rule 403 to exclude evidence of a prior transaction between the victim and a third party, where there was a dispute whether money was a gift or a loan, since admission of the evidence "would have necessitated an exhaustive case within a case that would have confused the jury as to the issues to be decided."); United States v. Malpeso, 115 F.3d 155, 162-63 (2nd Cir. 1997) (in prosecution relating to war between factions of the Colombo crime family, it was not an abuse of discretion under Rule 403 to exclude evidence that FBI agent leaked confidential law enforcement information to one faction of the family, because

the "likely (and presumably intended) effect of admitting [the] evidence . . . would have been to shift the focus away from the relevant evidence of the defendants' wrongdoing to the tangentially related misdeeds of one government agent.").

Argument

I.  The defendant has utterly failed to demonstrate that the alleged criminal conduct is probative of truthfulness.

In his Opposition, the defendant asserts, incorrectly, that the Government's motion "rests on a faulty premise – that the defense's sole purpose for introducing evidence of the criminal conduct at issue in the motion is to attack Yale Strogoff's character for untruthfulness." Opposition, p.1. He then asserts "[t]hough admissible for this purpose, the evidence is admissible for three additional reasons . . . ." Id. Presumably the "this purpose" referred to in defendant's Opposition is to attack Yale Strogoff's character for truthfulness. Yet no where in his Opposition does the defendant address this issue or offer any explanation as to how improper disposal of hazardous wastes and the improper acquisition of scrap metal from the General Electric plant in Lynn, Massachusetts, even if his allegations were true, are probative of Yale Strogoff's truthfulness or untruthfulness. Given the Government's extensive discussion in its Memorandum as to why this evidence is not probative of truthfulness, Memorandum, pp. 7-9, the defendant's failure to address this

issue in his Opposition should be construed as a concession that the evidence is not probative of truthfulness and is not admissible on that basis.

>    II.   The alleged criminal conduct evidence is inadmissible under Fed. R. Evid. 403 to prove motive or bias.

The defendant argues that evidence relating to the disposal of hazardous waste at S. Strogoff & Co. and that company's purchases of scrap metal from the General Electric plant in Lynn, Massachusetts "is probative of Strogoff's motive to cooperate with the government and, specifically, to falsely accuse Diamont of criminal conduct." Defendant's Opposition, p.6. If this evidence has any relevance on the issue of bias, it is extremely marginal. It is not clear from the defendant's description of his alleged evidence that any federal offense is evident in the conduct the defense describes. The defendant certainly has never cited any federal criminal statute he believes was violated. Nor is there any reason to believe these matters would cause Mr. Strogoff to pick out John Diamont, from the many customers of his business who were paid in cash or checks payable to fictitious payees, for false accusation.

This evidence comes with substantial dangers of unfair prejudice, confusion of issues and misleading the jury and concerns about undue delay and waste of time. Fed. R. Evid. 403. The evidence, if relevant at all, would be relevant only on the issue of bias. There is a substantial danger of unfair

prejudice.  The defendant has argued that the evidence relating to the purchases from the General Electric plant is relevant to "the risk of putting defective aircraft parts in commerce, and it could involve the disclosure of . . . military secrets."  Both of these topics are likely to produce emotional responses in the jury, unrelated to bias.  Similarly, some jurors will react emotionally to allegations of improper disposal of hazardous waste.  Even with limiting instructions, there is a substantial danger that the jury will be confused and misled as to why this evidence is being admitted.  It is unlikely that this evidence could be admitted quickly.  It would probably involve the defendant calling witnesses solely on these issues and the government calling rebuttal witnesses.

In analyzing the admission of evidence under Rule 403, the Supreme Court has repeatedly said that the trial court, in balancing the probative value of the evidence against its costs, must consider whether a party has other evidence with which to establish the fact it is seeking to establish, here bias, without the same dangers and costs.  Old Chief, 519 U.S. at 184-85; Eichel v. N.Y. Central RR Co., 375 U.S. at 254.  Here the defendant has a wealth of other evidence to show Yale Strogoff's potential bias in favor of the United States, including (1) the fact that he was prosecuted only for his conduct relating to the Kradins; (2) his plea agreement; (3) defendant's arguments that

the United States provided information to Judge Zobel relating to only some of the tax loss resulting from Strogoff's actions; and (4) the government's proffer letter agreement with Strogoff that we would not use his statements to us directly against his son. The defendant also alleges he is "aware of numerous other instances of Strogoff's criminal conduct," which, presumably, the defendant could seek to use to establish bias.[1]

In United States v. Smith, 196 F.3d 1034, 1037-38 (9th Cir. 1999), a public corruption prosecution of a city councilor for accepting bribes, Thomason, a government witness, testified he paid a bribe to the defendant and to other public officials. To discredit Thomason, the defendant sought to call three witnesses who allegedly received illegal contributions from Thomason. Id. at 1037. Like defendant Diamont here, defendant Smith argued that he should have been allowed to call these witnesses "to show a plan on the part of Thomason to fabricate lies about different politicians in order to avoid prosecution." Id. The Ninth Circuit found this evidence "clearly was excludable under Rule 403 because its probative value, if any, was substantially outweighed by the danger of confusing the issues, of misleading

---

[1] With regard to these "other instances" of alleged criminal conduct by Strogoff, the United States urges the Court to order the defendant to clear such matters with the Court, prior to raising such matters in the presence of the jury. Given the defendant's history of reckless allegations in this case, the United States believes it should have an opportunity to object to such evidence before it is raised in front of the jury.

the jury, and of needlessly presenting cumulative evidence." Id. at 1038.  The Court pointed to the fact that Thomason's own admissions showed bias in favor of the government, so that the further evidence "would not have added significantly to the inference of bias." Id.  So likewise here, further evidence relating to hazardous waste and General Electric scrap metal, will not add significantly to the inference of bias.

>    III. The alleged criminal conduct is inadmissible under Rule 403 to prove reward or inducement.

The defendant argues that the government's alleged failure to investigate this alleged criminal conduct by Strogoff is admissible as "a reward and inducement for [Strogoff's] cooperation with the government." Opposition, p.6.  It is unclear how this alleged failure to investigate could be an inducement to obtain Strogoff's cooperation, since the government did not learn of the allegations until long after Strogoff had proffered, agreed to cooperate and testified in the grand jury. There is certainly no reason to believe Strogoff thought the government was aware of this alleged conduct at the time he agreed to cooperate or provided information about the conspiracy with Diamont.

As the defendant acknowledges in his Opposition, reward and inducement evidence is probative, if at all, on the issue of bias.  Opposition, p.6 ("The extent of the criminal behavior is relevant to establish the size of the reward or inducement - a

the jury, and of needlessly presenting cumulative evidence." Id. at 1038.  The Court pointed to the fact that Thomason's own admissions showed bias in favor of the government, so that the further evidence "would not have added significantly to the inference of bias." Id.  So likewise here, further evidence relating to hazardous waste and General Electric scrap metal, will not add significantly to the inference of bias.

>    III. The alleged criminal conduct is inadmissible under Rule 403 to prove reward or inducement.

The defendant argues that the government's alleged failure to investigate this alleged criminal conduct by Strogoff is admissible as "a reward and inducement for [Strogoff's] cooperation with the government." Opposition, p.6.  It is unclear how this alleged failure to investigate could be an inducement to obtain Strogoff's cooperation, since the government did not learn of the allegations until long after Strogoff had proffered, agreed to cooperate and testified in the grand jury. There is certainly no reason to believe Strogoff thought the government was aware of this alleged conduct at the time he agreed to cooperate or provided information about the conspiracy with Diamont.

As the defendant acknowledges in his Opposition, reward and inducement evidence is probative, if at all, on the issue of bias.  Opposition, p.6 ("The extent of the criminal behavior is relevant to establish the size of the reward or inducement - a

key determinant of bias in a cooperating witness."). As set forth above, there is not really any question that the jury will have plenty of evidence on the issue of Strogoff's bias, without any evidence about hazardous waste and the purchase of airplane parts, to critically evaluate Strogoff's testimony. Whether characterized as evidence on the issue of "bias" or "rewards and inducements," this evidence has the same marginal probative value and the same substantial costs and dangers.

In <u>United States v. Nelson-Rodriguez</u>, 319 F.3d at 34-35, a drug trafficking case, the defendants argued the district court had erroneously excluded evidence that a key government witness, Hernandez, had a role in the killing of five alleged drug traffickers. Hernandez had acknowledged to the government he was present during the killings. <u>Id</u>. at 34. The First Circuit said the district court did not abuse its discretion in excluding the evidence, on the ground that it had "little probative value" and "might have confused the jury as to the issue before it," pointing to the facts that (1) the murders were in 1992 and unrelated to the charged conspiracy in 1997; (2) the government was prepared to offer multiple witnesses that Hernandez was not the killer; and (3) the jury knew that Hernandez had a long history of serious criminal behavior, including admitting he was a drug dealer. <u>Id</u>. at 35. So likewise here, the evidence the government seeks to exclude is (1) unrelated to the charged

conduct; (2) the government may offer contradictory evidence; (3) the jury will be aware that Strogoff had been paying Diamont and other customers for many years in cash and checks to fictitious payees; and there is a substantial risk the evidence will "confuse[] the jury as to the issue before it," Strogoff's alleged bias in favor of the government.

> IV.  The alleged criminal conduct is inadmissible under Rule 403 to prove the cash was not paid to Diamont.

The defendant argues that the evidence at issue here is relevant to prove "two possible outlets" for the cash from Strogoff's business, other than paying it to Diamont for scrap metal.  Opposition, p.7.  He claims to have a witness who has said that S. Strogoff & Co. was able to purchase valuable materials from the General Electric plant by "bribing a plant employee."  Id.  He also claims that he can prove that Strogoff "incurred cash expenditures," in connection with disposing of hazardous wastes, although he fails to state what those expenditures were.  Id.

If the defense theory of admissibility of this evidence is to show the cash was not paid to Diamont, because it was needed for these two other purposes, its probative value is infinitesimal.  As the defendant has repeatedly pointed out in numerous prior pleadings, over the years in question, S. Strogoff & Co. had millions of dollars of cash.  The business paid numerous customers, in addition to Diamont, in cash.  The

11

business cashed checks virtually every day of the week. Even if it were true, and we have no evidence that it is, that S. Strogoff & Co. were bribing a General Electric employee to obtain metal, there is no logical inference that the cash used to pay the bribe was coming from the checks to fictitious payees which were cashed in connection with settling up the Crystal Steel account. There was just too much other cash in this company for the jury to make such an inference.

In <u>United States v. McVeigh</u>, 153 F.3d 1166, 1188-91 (10th Cir. 1998), the Oklahoma City bombing case, the defense argued the district court had improperly excluded evidence of alternative perpetrators of the bombing. The defense argued the evidence was relevant to show (1) there were other perpetrators of the bombing; and (2) the government's investigation of the bombing was "shoddy and slanted" after the investigators became satisfied that McVeigh was the principal perpetrator. <u>Id</u>. at 1190. In upholding the exclusion of the evidence on Rule 403 grounds, because of the danger of confusion of issues and misleading of the jury outweighed the slight probative value of the proffered evidence, the Tenth Circuit said:

> Although there is no doubt that a defendant has a right to attempt to establish his innocense by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted 'alternate perpetrator.' (Citation omitted). It is not

> sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime.

Id. at 1191. So likewise here, in order for the contested evidence to be admissible as an alternative explanation as to where the cash went, the defendant needs to show some nexus between checks which were cashed in connection with settling up the Crystal Steel account and the alleged bribe payments. The defendant has failed to show any such nexus.

## Conclusion

For the foregoing reasons, and those contained in our Memorandum in Support of the motion, the Government's Motion In Limine to Exclude Evidence of Alleged Criminal Conduct of Yale Strogoff Not Resulting In Conviction should be granted.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: /s/ Peter A. Mullin
>     PETER A. MULLIN
>     Assistant U.S. Attorney

Dated: May 19, 2006

## Certificate of Service

I, Peter A. Mullin, Assistant U.S. Attorney, hereby certify that a true copy of this document was served on counsel of record for the defendant by electronic filing this 19th day of May, 2006.

> /s/ Peter A. Mullin
> PETER A. MULLIN
> Assistant U.S. Attorney