UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOHN J. DIAMONT, JR., )<br>Defendant ) | CRIMINAL NO. 05-10154-MLW |

**GOVERNMENT'S MOTION TO DETERMINE WHETHER AN ACTUAL OR POTENTIAL CONFLICT OF INTEREST EXISTS**

The United States hereby requests that the Court hold a hearing, prior to taking testimony on March 21, 2007, to determine whether an actual or potential conflict of interest exists because of defense counsel's prior representation of the government in another case.  If the Court determines that such an actual or potential conflict of interest exists, the government requests that it decide whether it may be waived by defendant John J. Diamont, Jr.

The substance of the putative conflict was raised by letter dated May 31, 2006 from Peter A. Mullin, formerly attorney for the government in this case, to Diamont's counsel, Michael Kendall.  A copy of the letter is attached.  The letter notes that pleadings filed by defense counsel had alleged that Yale Strogoff was a former customer of Heller's Café, that Strogoff had cashed checks and generated quantities of cash there, and that Heller's Café had its bank accounts at Broadway National Bank.  Ltr. at 1-2.  The activities of Heller's Café were a subject of United States v. Michael B. London, Crim. No. 90-

10079-MLW (D. Mass.), in which attorney Kendall represented the government as an Assistant U.S. Attorney. As the letter notes, attorney Kendall would be prohibited from using in Diamont's defense any confidential information Kendall had learned in the course of representing the government.

The government's letter identified and discussed the putative conflict of interest, cited to the relevant rules of professional conduct[1] and pertinent caselaw,[2] and requested a response from defense counsel. Former AUSA Peter Mullin, who recently retired, has advised the undersigned that defense counsel never responded to the letter.

On March 9, 2007, the undersigned discussed this issue with attorney Kendall by telephone. Attorney Kendall represented that he had not made use of any confidential information obtained during his government service in the course of representing Mr. Diamont.

Assuming, *arguendo*, that attorney Kendall in fact has not made use of any confidential information obtained during his

---

[1] Mass. Rule of Prof. Conduct 1.6(a) (providing in pertinent part: "A lawyer shall not reveal confidential information relating to representation of a client unless the client consents after consultation, except for disclosures [not applicable here]").

[2] United States v. Foster, 469 F.2d 1, 4-5 (1st Cir. 1972); Miller v. United States, 564 F.2d 103, 106 (1st Cir. 1977); United States v. Fahey, 769 F.2d 829, 834-35 (1st Cir. 1985); United States v. Martorano, 620 F.2d 912, 914 (1st Cir. 1980); United States v. Donahue, 560 F.2d 1039, 1044 (1st Cir. 1977).

government service, the reference in defense pleadings to such matters which had been within the scope of his government service raises the appearance of a conflict of interest that should be addressed by the Court.  If an actual or potential conflict is present, the Court should conduct an inquiry to determine if the defendant fully understands the conflict and its potential consequences to him at trial.  <u>Mountjoy v. Warden</u>, 245 F.3d 31, 36 (1st Cir. 2001) ("The inquiry thus includes an on-the-record discussion of the representation with the defendant").

 For all the above reasons, the government requests that the Court hold a hearing, prior to taking testimony on March 21, 2007, to determine whether an actual or potential conflict of interest exists because of defense counsel's prior representation of the government in another case.  If the Court determines that such an actual or potential conflict of interest exists, the government requests that the Court decide whether it may be waived by defendant John J. Diamont, Jr.

         Respectfully submitted,

         MICHAEL J. SULLIVAN
         United States Attorney

      By: <u>/s/ Mark J. Balthazard</u>
         MARK J. BALTHAZARD
         Assistant U.S. Attorney

<u>Certificate of Service</u>

 I hereby certify that on March 14, 2007, this Notice of Appeal filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Mark J. Balthazard
MARK J. BALTHAZARD
Assistant U.S. Attorney



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*    *United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts  02210*

May 31, 2006

Michael Kendall, Esquire
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775

   Re: <u>United States v. John J. Diamont, Jr.</u>
     Criminal No. 05-10154-MLW

Dear Mr. Kendall:

  I write to raise an issue we have previously discussed relating to the Rules of Professional Conduct for attorneys and to suggest that at a minimum, Judge Wolf needs to hold a hearing, on the record, at which your client, John J. Diamont, Jr., waives his right to conflict-free representation.

  Your client in the above-reference criminal case is John J. Diamont, Jr., the defendant.  The opposing party is the United States of America.  I expect that the United States will call Yale Strogoff to testify at trial, and he will have testimony which is highly incriminating to Mr. Diamont.

  While you were an Assistant U.S. Attorney you represented the United States of America in the case <u>United States v. Michael B. London</u>, Crim. No. 90-10079-MLW (D. Mass.), which involved activities at Heller's Café in Chelsea, MA.  On March 13, 2006, in the <u>Diamont</u> case, you filed with the Court a Defendant's Memorandum Regarding Status Conference (Dkt. No. 62-1), which alleged "[t]he Strogoffs generated millions of dollars of cash from their business by cashing checks at Heller's Café in Chelsea, and Broadway National Bank."  On April 21, 2006 you filed with the Court in the <u>Diamont</u> case a Memorandum in Support of Defendant's Motion <u>In</u> <u>Limine</u> to Exclude Disputed Invoices and Disputed Checks which alleged:

> During the 1980's, Strogoff was a customer of Heller's Café, where he cashed checks and generated quantities of cash.  When the government cracked down on the illegal money-laundering activities at Heller's in the mid-1980's, Strogoff shifted his activities to Broadway National Bank in Chelsea, where Heller's had its bank accounts.  There, Strogoff cashed checks and continued to generate cash.

<u>Id.</u>, p.5

Mass. Rule of Professional Conduct 1.6(a) provides in pertinent part:

> A lawyer shall not reveal confidential information relating to representation of a client unless the client consents after consultation, except for disclosures [not applicable here].

West, Mass. Rules of Court, State, p.359 (2006).  Comment 4 to Rule 1.6 provides "[a] fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation."  Id. Comment 5 to Rule 1.6 provides "[t]he confidentiality rule applies not merely to matters communicated in confidence by the client but also to virtually all information relating to the representation, whatever its source."  Id. at 360.  Comment 5A provides "the mere fact that information disclosed by a client to a lawyer is a matter of public record does not mean that it may not fall within the protection of this rule."  Id.

You and I spoke by telephone on March 13, 2006 after I had read Defendant's Memorandum Regarding Status Conference.  I raised with you at that time whether you were using, adversely to the United States, confidential information you had obtained during the course of your representation of the United States in the London case.  You claimed you were not violating the Rules of Professional Conduct, because, even though you said you had learned about Strogoff when you were an AUSA, there was some witness who had told you recently, during your representation of John Diamont, that Yale Strogoff used to cash checks at Heller's Café.  You said you were not willing to disclose the identity of that witness to me, but you were willing to reveal it to Judge Wolf.

With the filing of your Memorandum in Support of Defendant's Motion In Limine to Exclude Disputed Invoices and Disputed Checks, I have grown even more concerned that you may be using, adversely to the interests of the United States, confidential information you learned as an AUSA.  In that pleading, at page 5, you allege that Heller's had its bank accounts at Broadway National Bank.  This is the type of information you would have learned in the course of representing the United States.  As the quotations set forth above from Comments 4, 5 and 5A to Rule 1.6 make clear, even if this information became a matter of public record at some point in connection with the London case, it is the type of confidential information a lawyer is not permitted to use, adversely to a former client, without the former client's consent.  No such consent has been provided here.

The extent to which you seem to have injected Heller's Café into the Diamont case raises a second issue.  In United States v. Foster, 469 F.2d 1, 4-5 (1st Cir. 1972), the Court of Appeals imposed a duty on the trial court, in joint representation situations, to make an inquiry, on-the-record, of each defendant, to insure each is aware of the risks inherent in joint representation and that each is knowingly and voluntarily waiving his right to separate representation. Later cases have extended the Foster obligation to

other situations, where other obligations of the defense counsel create an actual or potential conflict with the lawyer's representation of the defendant on trial.  Miller v. United States, 564 F.2d 103, 106 (1st Cir. 1977) (concurrent representation of a defendant and a witness against him); United States v. Fahey, 769 F.2d 829, 834-35 (1st Cir. 1985) (defense counsel's former partner potential trial witness).  Here the issue is whether your obligation to your former client, the United States, to maintain the confidentiality of information gained in the London case, conflicts with your duty to zealously represent John Diamont.  The Court of Appeals has said that the Foster inquiry should be made "as early in the litigation as practicable."  United States v. Foster, 469 F.2d at 5.  It has required that the trial court make the inquiry itself, of the defendant personally, in open court, on the record, rather than relying on defense counsel.  United States v. Martorano, 620 F.2d 912, 914 (1st Cir. 1980); United States v. Donahue, 560 F.2d 1039, 1044 (1st Cir. 1977).

It seems to me that any evidence that Yale Strogoff ever cashed any checks at Heller's Café is extremely remote to the issue to be tried in the Diamont case.  The search warrant was executed at Heller's Café in December, 1986.  Crystal Steel did not begin selling scrap metal to S. Strogoff and Co. until 1990.  Thus, if you are willing to agree that, in connection with your representation of John Diamont, you will not make further references to Yale Strogoff's alleged cashing of checks at Heller's Café, then I see no need to pursue the question of whether you are using confidential information gained in the course of representing the United States in violation of Mass. Rule of Professional Conduct 1.6.  If you are unwilling to so agree, then I may need to pursue this issue further.

Given what has happened to date, it seems to me the United States needs to raise the Foster issue with the Court and Judge Wolf needs to make inquiry of John Diamont, on the record, with regard to his knowledge of this potential, if not actual, conflict of interest, and his knowing and voluntary waiver of his right to conflict-free representation.  Before raising this issue with the Court, however, I thought it appropriate to raise the issue directly with you.  Please let me know your views on whether you plan to continue to attempt to interject Heller's Café into this case, and whether you agree that a Foster hearing is necessary here.

                    Sincerely yours,

                    MICHAEL J. SULLIVAN
                    United States Attorney
By:

                    _____
                    PETER A. MULLIN
                    Assistant U.S. Attorney